Ex parte KRUK.

No. 25036–S.

District Court, N. D. California, S. D.

Oct. 31, 1945.

Benjamin Dreyfus and Louis Licht, both of San Francisco, Cal., for petitioner.

Frank J. Hennessy, U. S. Atty., and Joseph Karesh, Asst. U. S. Atty., both of San Francisco, Cal., for respondents United States Navy and Captain Elmer F. Helmkamp.

ST. SURE, District Judge.

Petitioner seeks release by habeas corpus from the Receiving Ship at San Francisco, where he is detained awaiting trial by a naval court martial upon a charge of desertion.

Pursuant to the provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., petitioner reported for induction into the armed forces of the United States, on August 6, 1943, at Maplewood, New Jersey. Under the process of induction petitioner was examined, accepted, informed that he had been inducted into the navy, and was ordered to report for duty one week later at the recruiting station at Newark, N. J. He failed to report and left for parts unknown. On July 16, 1945, he was apprehended at San Jose, California, by the Federal Bureau of Investigation and delivered to the detention barracks.

The question for decision is whether under the facts and the law, petitioner was on August 6, 1943, actually inducted into the navy.

At the hearing on the return to the writ, petitioner testified that on August 6, 1943, he reported voluntarily at the Armory in Newark for induction, pursuant to instructions of his local selective service board; that while there he told two officers that he wanted army service, and when asked why he preferred the army, said, "Well, a better chance of staying around the family"; that the word "navy" was stamped on his slip and he was taken in a station wagon with about five other men to the Newark Post Office; that there he signed several documents, none of which he read, nor was he informed of their contents, although one of them included induction articles in the navy to which was attached an oath of allegiance to the United States of America; that he was fingerprinted, and marched into another room with other selectees; that an officer read the oath and told the selectees to raise their right hands; that he did not raise his hand or take the oath; that his action was observed and an entry made on his service record. He further testified that on the same day he was interviewed by a naval officer concerning his refusal to take the oath; that he asked if he could not be transferred to the army, and was informed that nothing could be done at that time, that he was in the navy. When asked what was his reply to the order to report for duty one week later, petitioner was uncertain, but thought he said he would not be back. This statement is the only evidence of an express refusal to serve in the navy. He did not thereafter report for duty, but decamped on the day he was to report and, as we have seen, was

arrested about two years later in California as a deserter and delivered to the naval authorities.

Army Regulations 615-500, paragraph 13, relating to induction after acceptance and induction ceremony, were offered in evidence without objection as the regulations governing induction into the navy at the time petitioner reported for induction. The pertinent sections are § e(1), describing the ceremony to be performed, and § e (4), which provides: "They will then be informed that they are now members of the Army of the United States and given an explanation of their obligations and privileges. In the event of refusal to take the oath (or affirmation) of allegiance by a * * * citizen he will not be required to receive it, but will be informed that this action does not alter in any respect his obligation to the United States."

It was admitted at the hearing here that after the inception of the process of induction a selectee may not choose the branch of the service he would enter.

The leading case on the question for decision is Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917. In that case Billings, after repeated assertions during the induction process of his intention not to serve in the armed forces, was placed under guard to prevent him from leaving the reservation. He was permitted to telephone an attorney to represent him in a habeas corpus proceeding. The oath of allegiance was then read to him by an army officer, and he refused to take the oath. He was advised that his refusal made no difference; that he was in the army. He then refused to obey an order to submit to fingerprinting, and military charges were preferred against him for wilful disobedience of that order. His petition for writ of habeas corpus, alleging that he was not subject to military jurisdiction, was discharged by the District Court. 46 F.Supp. 663. The Circuit Court of Appeals, 135 F.2d 505, 507, affirmed the District Court, holding that "Induction was completed when the oath was read to petitioner and he was told that he was inducted into the Army." On writ of certiorari the Supreme Court stated [321 U.S. 542, 64 S.Ct. 746], "A selectee becomes 'actually inducted' within the meaning of § 11 of the Act when in obedience to the order of his board and after the Army has found him acceptable for service he undergoes whatever ceremony or requirements of admission the War Department has prescribed." The Supreme Court found that the induction ceremony constituted the "actual induction," and that since Billings did not voluntarily undergo induction and could not be inducted forcibly, the military authorities did not have jurisdiction over him.

In Mayborn v. Heflebower, 5 Cir., 145 F. 2d 864, 866, certiorari denied 65 S.Ct. 1087, the court held that a selectee who reported for induction, stood with his fellows during the induction ceremony, did not say to anyone that he would refuse to submit to induction or perform his duties as a soldier, but declined to take the oath of allegiance, was inducted into the army and rendered subject to military jurisdiction. The court quoted from Army Regulations 615-500, paragraph 13, above referred to, and stated: "Each step in the induction process he took willingly and voluntarily, except that he declined to take the oath of allegiance. Under the express terms of the italicized portions of the regulations relating to the induction ceremony, the taking of the oath was not a prerequisite to induction. His compliance in all other respects with the procedure prescribed concluded the selective process and rendered him subject to military jurisdiction. Billings v. Truesdell, supra." The decision is based upon the further ground of the subsequent conduct of the selectee in voluntarily accepting the benefits and assuming the obligations incident to membership in the armed forces for a period of more than two months. In the companion case of Hibbs v. Catovolo, 145 F.2d 866, decided by the same court, petitioner refused to take the oath but voluntarily performed all duties required of him as a soldier, and accepted pay, purchased war risk insurance, made allotments, etc., from September, 1943, until June, 1944. The court held that petitioner was actually inducted when he complied in all respects, other than taking the oath, with the procedure prescribed at the induction station; and that if not, by his subsequent conduct he became a member of the armed forces. The decision is based on the authority of and reasoning in Mayborn v. Heflebower, supra. I do not think that these decisions of the Circuit Court of Appeals for the 5th Circuit are in conflict with Billings v. Truesdell. In the latter case, Billings' presence at the

induction ceremony was forced, and he therefore never was "actually inducted." In the Mayborn and Hibbs cases, it does not appear that the respective petitioners were forced to attend the ceremony, and their applications are based upon their refusal to take the oath. As shown above, section e(4) of Army Regulations, 615-500, paragraph 13, expressly provides for the situation where the selectee refuses to take the oath: "He will not be required to receive it, but will be informed that this action does not alter in any respect his obligation to the United States." The selectee is inducted if he voluntarily attends the induction ceremony, because, in the language of Billings v. Truesdell, supra, "a selectee becomes 'actually inducted' within the meaning of § 11 of the Act when in obedience to the order of his board and after the Army has found him acceptable for service he undergoes whatever ceremony or requirements of admission the War Department has prescribed," and the taking of the oath is not made a requirement of admission.

The facts in the present case differ from those in the Mayborn and Hibbs cases, supra, in that petitioner here did not, after the induction ceremony, accept the benefits or assume the obligations of a member of the armed forces. However, in each case the court found that the selectee was properly inducted in accordance with Army Regulations, and his subsequent conduct was cited as additional ground for the decision.

In Billings v. Truesdell, supra, the petitioner was "forced" to submit to induction, while in the case at bar no force whatsoever was used, and the only compulsion attending petitioner's voluntary acts was such as is inherent in the Selective Service Act applicable alike to all persons coming within its provisions.

After his induction petitioner did not make any attempt to legally test his status. He made no effort to be transferred from the navy to the army, but he ran away. He left the state of New Jersey without notifying his draft board, and remained away for almost two years, when he was apprehended by the F. B. I.

■ I am of the opinion that petitioner was actually inducted into the United States Navy and is subject to the jurisdiction thereof. The motion to dismiss will be granted and the writ discharged.