## MAYBORN v. HEFLEBOWER, General.

### No. 11126.

Circuit Court of Appeals, Fifth Circuit.

Dec. 13, 1944.

Rehearing Denied Jan. 26, 1945.

Tom S. Williams, of San Antonio, Tex., for appellant.

John H. Haley, Jr., Capt., J.A.G.D., Assistant Staff Judge Advocate, 8th Service Command, of Dallas, Tex., Clyde O. Eastus, U. S. Atty., of Fort Worth, Tex., and Clyde G. Hood, Asst. U. S. Atty., of Dallas, Tex., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

George M. Mayborn was convicted by a special court-martial for refusal to obey an order of his commanding officer on March 29, 1944, at Camp Barkeley, Texas. He was sentenced to imprisonment for six months with forfeiture of pay. By a petition for habeas corpus, he challenged the validity of his confinement on the ground that he was not subject to military juris-

diction, because he had refused to take the oath administered as a part of the induction ceremony. The court below discharged the writ, and remanded the prisoner to the custody of the appellee. From that judgment, Mayborn appealed.

In his dealings with his local board as a registrant under the Selective Training and Service Act, 50 U.S.C.A. Appendix § 301 et seq., Mayborn consistently represented himself to be exempt from military service as an ordained minister of the Watch Tower Bible & Tract Society. He was nevertheless placed in class 1 A O (eligible for noncombatant military service), and after exhausting his administrative remedies in vain, was ordered to report for induction on November 10, 1943. He did so report; and he described what occurred at the Induction Station as follows:

"A. I made arrangements immediately to go to the officers that were in charge at the Induction Station and told them my position as a Christian, and that I could not take the oath of allegiance to any Military Service because I had made a covenant, and that was the will of Almighty God, and was also a minister of religion. Then I went ahead and took the examination and passed the examination, and all the boys that had passed the examination were taken as a group into the Army, and I was on the front row and I did not raise my hand and did not repeat after him, and he witnessed that fact.

"Q. Did you call that to his attention? A. Yes, sir.

"Q. What did he tell you? A. He told me, immediately after the oath had been administered, I stood up and told him I wished to make a statement, and he said, 'You will come with me,' to his office. So I went to his office with him and he made the statement that whether or not I had taken the oath, I was in the Army."

With others of his group, Mayborn immediately was given a three-weeks leave tr return home and settle his affairs, with instructions to report for training as directed at the end of that time. He returned to his home, but did not report for training as required by his orders. He was arrested as absent without leave, and was taken into custody by the military authorities. For this offense, a summary court-martial declared part of his month's pay forfeited. He then was ordered to report to Camp Barkeley, Texas, which order he obeyed voluntarily. Upon arrival there on January 5, 1944, he notified his company commander, Captain Turbert, that his religious affiliation forbade him to salute his officers or to obey their orders. Captain Turbert sent Mayborn to see Major Peterson. The details of appellant's conversation with the Major are not disclosed, but at its conclusoin Mayborn returned to Captain Turbert and told him that he had changed his mind and would undertake his duties as a soldier.

From January 5, 1944, to March 27, 1944, appellant saluted his officers, obeyed their orders, and willingly performed all the duties required of him as a soldier. He wore the clothing issued to him, used the soldier's franking privilege, made allotments from his pay to purchase the insurance available to him as a soldier and to buy war bonds, and had an operation performed at the army hospital to secure relief from an ailment from which he suffered when called to duty. He did these things without protest or objection.

On March 27, his commanding officer received a letter from Mayborn advising that he would refuse to participate in further military training because to do so would do violence to his religious principles. The officer ordered Mayborn to continue his n.ilitary training, and his refusal to comply resulted in the trial and confinement that gave rise to these proceedings.

In Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, the Supreme Court held that a registrant was subject to the provisions of the Selective Training and Service Act and the valid regulations promulgated thereunder at all times prior to being actually inducted into the armed forces, and that all infractions thereof were punishable by the civil authorities only; after induction, he is governed by the Articles of War, 10 U.S.C.A. § 1471 et seq., and is amenable to military jurisdiction. The question of jurisdiction here presented therefore turns upon whether Mayborn, at the time he committed the offense for which he was imprisoned, had been actually inducted into the armed forces.

In the Billings case, the court held that a selectee was actually inducted when, in obedience to the order of his board and after the army had found him acceptable for service, he underwent whatever ceremony or requirements of admission the War Department had prescribed. The ceremony or requirements of admission prescribed by the War Department, and in effect on November 10, 1943, were Army

Regulations 615-500,[1] Paragraph 13, which provided:

"d. Induction. Upon completion of the physical examination and after certification by the medical officer, selectees found to be physically and mentally fit for general military service will be inducted.

"e. Induction ceremony.

"(1) The induction will be performed by an officer who, prior to administering the oath, will give the men about to be inducted a short patriotic talk. The ceremony should take place in a setting, preferably a large room, made colorful by the display of flags with guard and display of suitable pictures, and made as impressive as possible. Wherever practicable, martial music will be provided either by a band or in the form of recorded music. * * * The oath, Article of War 109, will then be administered: * * *

"(4) They will then be informed that they are now members of the Army of the United States and given an explanation of their obligations and privileges. *In the event of refusal to take the oath (or affirmation) of allegiance by a * * * citizen he will not be required to receive it, but will be informed that this action does not alter in any respect his obligation to the United States.*"

■ We think appellant's quoted testimony reveals that he was actually inducted on November 10, 1943. He reported for induction, took and passed his examinations, reported to the inducting officer, and stood with his fellows during the induction ceremony. He did not say to any one that he would refuse to submit to induction or that he would not perform his duties as a soldier. Each step in the induction process he took willingly and voluntarily, except that he declined to take the oath of allegiance. Under the express terms of the italicized portions of the regulations relating to the induction ceremony, the taking of the oath was not a prerequisite to induction. His compliance in all other respects with the procedure prescribed concluded the selective process and rendered him subject to military jurisdiction. Billings v. Truesdell, supra.

■ We are of the further opinion that whether or not all formalities prerequisite to induction were observed, the subsequent conduct of the parties was such that the irregularities were cured or the right to invoke them was waived. It is manifest that the induction officers regarded appellant as a soldier at all times after the induction ceremony was completed, and appellant voluntarily accepted the benefits and assumed the obligations incident to membership in the armed forces. The idea that a soldier's tenure in the service may be terminated by him at will, or that a selectee may enter the army on a trial basis and stay if he likes it or leave if he does not, is wholly foreign to the military concept in time of war, and diametrically opposed to the necessary policy of any sovereign.

The judgment is affirmed.

---

[1] This regulation differs, in respect to the taking of the oath, from that considered in Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737.