376

Major Reid B. Barnes, J.A.G.D., 4th Service Command, M. Neil Andrews, U. S. Atty., and Harvey H. Tisinger, Asst. U. S. Atty., all of Atlanta, Ga., for appellant.

No appearance was entered on behalf of appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Hugh Callan was convicted by a general court-martial for violations of the 62nd and 96th Articles of War, 10 U.S.C.A. §§ 1534, 1568. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances due or to become due, and to be confined at hard labor for a period of twenty years. The reviewing authority approved the sentence and designated the United States Penitentiary at Atlanta, Georgia, as the place of confinement.

On May 21, 1943, Hugh Callan filed a writ of habeas corpus, and the case was continued, to enable him to secure the evidence of military officers who had been moved to distant assignments since his induction and imprisonment. The trial court on the 14th day of September, 1944, rendered an opinion and entered a judgment sustaining the writ of habeas corpus and discharging the petitioner from custody.

The trial court found that the oath prescribed by the War Department was not administered or taken by petitioner, and that he was not inducted into the Army within the meaning of Section 11 of the Selective Training and Service Act, 50 U.S.C.A.Appendix § 311, and that petitioner was not subject to trial by court-martial, as such court did not have jurisdiction.

Petitioner was convicted of violating the 62nd Article of War in that he used the following disrespectful words against the President of the United States: "The President of the United States is a dirty politician, whose only interest is gaining power as a politician and safeguarding the wealth of the Jews * * *."

He was also convicted on the further charge of saying within the presence and hearing of enlisted men that: "President Roosevelt and his capitalistic mongers are enslaving the world by their actions in Europe and Asia, by their system of exploiting."

The petitioner was further convicted on the charge of violating the 96th Article of War in that at Camp Blanding, Florida on or about March 14, 1942, he did adhere to the cause of the enemies of the United States, and did advocate their cause by repeatedly stating as the truth that: "He (Private Callan) was opposed to military training in this Army (United States) because they were fighting countries that were right, and that he refused to fight in Asia, Europe or Africa; that Hitler's plan was one of necessity through moral truth, and that the people of America are vulnerable saps."

He was further convicted on the charge that he did willfully attempt to cause and

induce insubordination and refusal of duty among the enlisted men of the 36th Infantry Division, by stating in their presence and hearing that: "The countries we are fighting are in the right; that Japan and Germany were justified in their war against the United States."

He was further convicted on the charge of stating in the presence and hearing of enlisted men that: "Japan and Germany were justified in their war against the United States."

Petitioner does not in his brief or evidence deny the charges and specifications, but only contends that he used respectful language in setting forth his criticisms of the President and of the United States and in expressing his views before enlisted men and officers of the United States Army. Almost his entire argument is to the effect that he did not take the oath prescribed when he was inducted.

A careful reading of the record will disclose that the petitioner possesses a very poor memory. He was unable to remember much of what transpired in sequence when he was examined and inducted into the service, what was said and done and just who was present. He is unable to tell whether he was required to go to a second floor or whether all the transactions incident to his induction were on the first floor. He further explained that he was lost from his group of inductees, that he saw and heard another group take the oath; yet the evidence shows conclusively that only one group at a time would be permitted to enter where the oath was taken, and that they would be required to stand. It is clearly shown that if he had succeeded in passing the guards and entering the room he would have walked into the standing group. Moreover, he testified that he only heard the conclusion of the oath, the words which he heard being, "So help me God." It is shown to a moral certainty that the oath then and there administered to inductees did not contain or conclude with the words, "So help me God" but concluded with the words, "According to the rules and Articles of War."

We are of opinion that when the oath was administered the petitioner was present and such oath was administered to him. However this may be, the petitioner appeared before an officer on the next day and after an interview with that officer, promised that he would fight for his country and make a good soldier. He did not advise that officer that he had not taken the oath. Thereupon he drew and put on a regulation army uniform for enlisted men. He went to Camp Blanding on a train, the fare being paid by the Government. He was fed by the Army. He also drew uniforms or clothing at Camp Blanding and drilled with other enlisted men. He drew pay after he entered the Army.

■ If we were able to give the weight and credence to the petitioner's evidence that the trial court has given, we nevertheless are of opinion that it would in no wise aid him, since he waived such oath when he voluntarily entered upon the army service. We are led to this conclusion for the reason that petitioner testified that he had no idea of refusing to take the oath, and when asked, "Would you have taken the oath if you had been asked?" he replied, "Of course, I comply with the law, I have never violated the law yet." He further testified that, "I admit signing the papers there and it is really not necessary, it is merely a question. I was not in the room at the time this oath was administered, and that is the oath that is involved." He further testified that, "It is not necessary to go into detail, as I figured the issue involved at that particular time was taking the oath * * *."

If there can be a doubt that the petitioner did not take the oath it is shown to a moral certainty that he waived such formality and entered upon the service of a soldier and in all respects was inducted into the United States Army. Hibbs v. Catovolo, 5 Cir., 145 F.2d 866; Mayborn v. Heflebower, 5 Cir., 145 F.2d 864. Cf. Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917; Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.

■ Petitioner admits both in his testimony and in his brief that he did use language substantially the same as that charged. His brief bristles with his idea that he should be permitted to denounce the Government and lend aid and comfort to the enemies of the Republic in time of war, and that such conduct is one of his freedoms. The general court-martial clearly had jurisdiction, and the sentence of twenty years did not exceed the punishment authorized by law. Manual for Court-Martial U. S. Army, 1928, p. 188; 50 U.S. C.A. § 33.

378

It results that the findings, conclusions and judgment of the trial court are erroneous and the judgment is reversed and the cause remanded, with direction that Hugh Callan be forthwith remanded to the custody of Respondent, Joseph W. Sanford, Warden, U. S. Penitentiary, Atlanta, Georgia.

Reversed and remanded, with directions.

Circuit Court of Appeals, Second Circuit.