## COX v. FREDERICKS et al.
### No. 29251.

United States District Court
N. D. California, S. D.
April 27, 1950.

Victor E. Cappa, San Francisco, Cal., for petitioner.

Frank J. Hennessy, U. S. Atty., Joseph Karesh, Asst. U. S. Atty., San Francisco, Cal., for respondent A. C. Wedemeyer, Lieutenant General, United States Army.

ERSKINE, Judge.

This action involves a petition for a writ of habeas corpus alleging that petitioner is unlawfully imprisoned under the color of authority of the respondent. Upon issuance of the writ and return thereto by the respondent, a hearing was held, at which time the following facts were determined:

1. On June 20, 1941, the petitioner, Milton Harold Cox, returned his Selective Service Questionnaire to the Local Draft Board No. 111, Santa Clara County, California, as required by the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq. In this questionnaire the petitioner indicated by appropriate notation that by reason of religious training and belief he was conscientiously opposed to participation in military service. At that time he made no claim to being a minister or student preparing for the ministry.

2. On June 25, 1941, the petitioner personally delivered to the local board a letter claiming that he was an ordained minister of religion for Jehovah's Witnesses, entitled to a IV–D classification, and requesting such classification. Apparently this letter with supporting documents was lost or misplaced in the records of the local board.

3. On February 6, 1942 the Special Form for Conscientious Objectors—DSS Form 47—was sent by the local board to the petitioner.

4. On February 9, 1942 the petitioner wrote to the local board enclosing copies of his letters of June 1941, stating that they were the basis for his requested classification as a minister of the gospel, and that he had been advised that the local board had no record of these letters.

5. On February 15, 1942 the Chairman of the local board Will B. Weston made a written memorandum which was placed in petitioner's selective service file to the effect that he had personally investigated petitioner's objections to service, found them to be sincere, and recommended his classification as IV–E (conscientious objector). On February 19, 1942 the petitioner filed with the local board the above-mentioned Form 47 Special Form for Conscientious Objectors, in which he reiterated his claim for exemption as a conscientious objector and explained in detail the basis for the claim.

6. Nevertheless, the local board classified the petitioner I–A–O. Therefore, on March 16, 1942 petitioner appealed from this I–A–O classification and requested that the Appeal Board of Santa Clara County place him in classification IV–D, minister of the gospel. This appeal is of importance

in this case, and therefore is quoted in full. It reads as follows:

"Gentlemen:

"I hereby appeal from the classification 1A–O given me by Santa Clara County Draft Board No. 111 and request that I be placed in class 4–D by reason of the fact that I am a minister of the gospel.

"I am a member of Jehovah's Witnesses and we are taught and instructed to preach the word of God direct from the Bible. Membership in the organization makes each member a minister of the gospel with the duty to preach the word of God.

"I have not attended any religious school but have studied under the direction of the leaders in Jehovah's Witnesses.

"I am employed by Pacific Manufacturing Company during the day but hand out booklets and literature to people who are interested and play phonograph records to people who are interested and then return to talk with them upon request. I contend that these facts make me a minister and respectfully request that I be placed in class 4–D.

    "Respectfully submitted
        "Milton Harold Cox"  (Sgd.)

On April 10, 1942 the Appeal Board returned the petitioner's file to the local board, affirming the I–A–O classification on the ground that the petitioner did not appeal as a conscientious objector "but *only* because he claims to be a minister of religion", which latter claim could not be upheld. The letter denying the appeal reads as follows:

"Dear Sirs:

"We are sending you herewith the questionnaire and file of Milton Harold Cox, No. 4685.

"The action of your board in placing the registrant in Class 1–A–O has been affirmed.

"The registrant does not appeal as a conscientious objector, but only because he claims to be a minister of religion. He says in his appeal that every member of Jehovah's Witnesses is a minister of the gospel. This would seem to leave no one to form the body of the church or congregation and this board is of the opinion that registrant does not qualify either as an ordained or as a regular minister of the gospel.

    "Very truly yours,
        Board of Appeal No. 9
           By C. C. Coolidge  (Sgd.)
                 Chairman"

"CCC:GOC
Inclosure

7. Upon advice from the State Director of Selective Service that the petitioner's name was not listed on the Certified List of Jehovah's Witnesses who were entitled to consideration for a IV–D classification, the local board on May 8, 1942 notified the petitioner that his I–A–O classification would stand.

8. On June 12, 1942 the petitioner reported for induction at the induction station in San Francisco. He claims that he did not take the induction oath at this time or at any time, but that he continued on to the Presidio at Monterey with his draft group on the representation that he would there get a further hearing on his classification.

9. While at Monterey petitioner allegedly signed a statement purportedly abandoning his claim as a conscientious objector. The petitioner claims he never signed such a statement. The validity of his signature to this document was never proved. There is no foundation for the admission of this alleged statement in evidence, therefore, it is ordered stricken from the record, and this court disregards it.

10. Petitioner was then sent to a basic training camp in Alabama. He refused to take part in military training and at the first opportunity boarded a train and returned to his home in San Jose, where he has resided openly ever since.

Petitioner obtained a job with one of his former employers, thereafter changed his employment from time to time, but at all times remained in San Jose. He made absolutely no attempt to conceal his identity, or his address, or residence, or whereabouts. He was arrested by agents of the Federal Bureau of Investigation about May, 1949, almost seven years after he had left Camp Rucker in Alabama. During this period

he has supported his wife, and so far as the record shows has been a law-abiding industrious citizen.

The Army did not turn over his name to the Federal Bureau of Investigation until April, 1949, and its agents had no trouble whatever in finding and apprehending him. They just went to San Jose, located him and arrested him. In this connection it might be mentioned that after his return to San Jose in discussing his military status with his employers, or prospective employers, he stated that he had received a medical discharge from the Army.

After his arrest he was turned over to the Army authorities, and tried by a court martial for desertion in time of war, found guilty, and sentenced to five years at hard labor. This conviction was set aside and a retrial ordered. Pending this retrial he brought these proceedings.

Petitioner's contentions here consist of the following:

1. That his order of induction was void because there was no substantial basis in his selective service record for the classification order made in his case;

2. That he never took the oath during the induction ceremonies, and accordingly never became a soldier; and

3. That his prosecution by court martial is barred by the statute of limitations.

■ Regarding his first contention we agree with the petitioner that while this Court cannot review the decision of a local board on an appellate board in a proceeding of this kind, it has the power in a habeas corpus proceeding to determine whether the original classification and induction order was arbitrary, or capricious, or the result of the denial of a full and fair hearing. United States ex rel. Lawrence v. Commanding Officer, D.C., 58 F.Supp. 933, and cases therein cited.

■ In determining this question this Court is limited to the record in the petitioner's file. United States ex rel. Hull v. Stalter, 7 Cir., 151 F.2d 633; Miller v. United States, 6 Cir., 169 F.2d 865, 868.

■ If the record discloses that there was no substantial basis therein for the classification order made therein, this Court has the jurisdiction to declare the order of induction void. If we were dealing in this case with the petitioner's selective service record up to his classification by his local board I would feel that the contention of petitioner is correct, and that there was no basis for the classification order that was made. In other words, the petitioner's selective service file up to the time of his appeal from the order giving him the classification of I-A-O showed no basis for giving him any other classification than that claimed by him, towit, conscientious objector. The difficulty with petitioner's contention in this respect, however, develops from an examination of what occurred in connection with his appeal from the first order of his local board. It has been pointed out in previous decisions that before a draftee may attack the validity of an induction order he must exhaust his administrative remedies, that is, he must take the appeals provided for either by the statute or regulations. In this case as heretofore pointed out, the petitioner took an appeal from the classification given him by the local board on the ground not that he was a conscientious objector, but that he was a minister of the gospel. His claim that he was a minister of the gospel has no basis in fact, and is not supported in any respect by his selective service file. Accordingly the appeal board's order rejecting his appeal on this ground may not be attacked.

■ Petitioner contends that since he took an appeal from the local board's classification, even though his specified ground for such appeal was that he should have been classified as a minister, that the appeal board should have examined his Selective Service file and classified him as a conscientious objector, which clearly the local board should have done. Petitioner bases this contention upon the cases which hold that the appeal board is not bound by the local board's classification, that it should review the case *de novo,* and its classification supersedes the action of the local board. United States v. Pitt, 3 Cir., 144 F.2d 168; U. S. ex rel. Reel v. Badt, D.C., 53 F.Supp. 906, 907; Cramer v. France, 9 Cir., 148 F.2d 801.

■ Petitioner argues that it follows from this premise that the appeal board should have followed the procedure indicated by Section 5(g) of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 305(g), and paragraph 627.25 of the Selective Service Regulations, and that if he did not follow this procedure, and did not give the petitioner the hearing and investigation required thereby, and therefore it denied him the due process of the law.

The difficulty with this argument is that it ignores the fact that the appeal taken by petitioner was limited solely to the claim that he should have been classified as a minister. By thus limiting his appeal he impliedly, if not expressly, abandoned his claim to be classified as a conscientious objector. Said section 627.25 of the Regulations says in part: "If an appeal involves the question of whether or not a registrant is entitled to be sustained in his claim that he is a conscientious objector * * *."

In this case petitioner's appeal did not involve the question whether his claim as a conscientious objector should be sustained. Moreover, Section 5(g) of the Act, which said section 627.25 of the Regulations was meant to implement says: "* * * Any such person claiming such exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board provided for in Section 10(a) (2). *Upon the filing of such appeal with the appeal board,* the appeal board shall forthwith refer the matter to the Department of Justice for inquiry and hearing by the Department or the proper agency thereof."

In this action petitioner did not file with the appeal board *such an appeal,* that is, an appeal from the local board's refusal to classify him as a conscientious objector.

Since petitioner's appeal was limited to the failure of the local board to classify him as a minister, he cannot now claim that the appeal board should have gone into the question of his classification as a conscientious objector. To require an appeal board when an appeal is taken on one particular ground to examine the entire file and seek out any other ground it could find for rejecting the local board's classification would be, it seems to me, placing a burden upon such a board never intended by the Act or regulations, and entirely inconsistent with the national exigencies which said Act and regulations were intended to meet. I feel that in the case of an appeal such as was taken in this case the appeal board was justified in assuming and had the right to assume that all other grounds of appeal had been abandoned.

This view is supported by United States ex rel. Altieri v. Flint, D.C., 54 F.Supp. 889, affirmed in U. S. ex rel. Altieri v. Flint, 2 Cir., 142 F.2d 62, where it is suggested that an appeal to an appeal board solely upon one ground may be considered an abandonment of any other ground.

For the foregoing reasons I feel that petitioner's claim that he was inducted without due process cannot be sustained.

■ Regarding petitioner's second contention he never took the oath, and therefore never was inducted into the Army, under the circumstances of this case I cannot find this claim to be correct. The burden of proof to sustain this contention by a preponderance of the evidence is upon the petitioner. There is no direct evidence he did not take the oath, except that of the petitioner himself.

He testifies he appeared for induction in San Francisco on June 12, 1942, together with other draftees from Santa Clara County; that he told an officer there that he was a conscientious objector, and was told by this officer, whose name he did not know, to go ahead with his physical examination and that he would be given a hearing in Monterey on his claim as a conscientious objector. He then took the physical examination along with said other draftees. He says that then they were all taken into a room and stood in rows, that he was on the left end about three rows from the front; that an oath was read to them; that he never raised his hand, but turned his back, and then or thereafter told the said officer that he did not take the oath, and that

he was a conscientious objector. The only attempted corroboration of his statement that he did not take the oath is the statement of his wife that he telephoned her from Monterey that he had not taken the oath, and of two of his associate Jehovah's Witnesses to the effect he met one Wright in April, 1943, nine months after he left Camp Rucker and told him he had not taken the oath, and one Farmer whom he met shortly after his return to San Jose and to whom he made the same remark.

There is no record in his Selective Service file or in his files and letters, or elsewhere, as far as the evidence is concerned that he ever claimed that he had not taken the oath, except the testimony above mentioned. Petitioner contends that his exhibit 4, which was a letter he wrote to his wife from Camp Rucker, Alabama, is a written record that he did not take the oath, but this document says nothing about such refusal or failure.

Petitioner's situation is entirely different from that of the draftee in Lawrence v. Yost, 9 Cir., 157 F.2d 44. There the draftee testified that when the oath was administered to a group of inductees he failed and refused to take it. His statement was corroborated by his acts preceding and immediately subsequent to his attempted induction. He was outspoken he would not take the oath, and had not taken it. Immediately after the induction service he told the officers that he would not report to the Army and that he had not taken the oath and he did not report to the Army. He returned to his home and reported to the Clerk of his local board that he had not taken the oath. The Clerk made a written note to that effect in his file. Sometime after he made a full written report to the Federal Bureau of Investigation to the same effect. In short, his testimony that he had not taken the oath was supported by persuasive documentary and other evidence.

■ In the case at bar the testimony of petitioner is not so supported. On the contrary many circumstances compel the conclusion that his statement is incorrect. He failed to tell his local board that he had not taken the oath. He made no written statement to that effect to any official in the Army, or connected with the local board. Instead of refusing to report to the Army as in the Yost case he went voluntarily from the Presidio in San Francisco to Monerey, and from there to Camp Rucker, Alabama, he designated his wife as his beneficiary, he wore the uniform of the Army, accepted a pay check and other Army benefits, including free mailing privileges accorded a soldier. In writing to his wife from Alabama he did not tell her he had not taken the oath. When he applied for positions after his return to San Jose the excuse he gave for not being in the Army was to the effect that he had received a medical discharge, and when he was apprehended and arrested, and at his first court martial, he never made any claim that he had not taken the oath. These and other circumstances compel me to find that he has not sustained the burden of proving he was not properly inducted. Moreover, it might be said also that these circumstances show that his conduct after leaving the induction center amounted to a waiver of any irregularity in his induction. Mayborn v. Heflebower, 5 Cir., 145 F.2d 864; Sanborn v. Callan, 5 Cir., 148 F.2d 376.

■ With respect to petitioner's contention that his prosecution is barred by the statute of limitations, I am compelled to hold according to my interpretation of the applicable statutes that there is no statute of limitations applicable to desertion in time of war.

Conclusion

For the foregoing reasons I am constrained to discharge the writ heretofore issued. I do so with regret, however, because I feel that in view of the fact petitioner was a sincere conscientious objector according to the finding of the chairman of his own local board he should have been classified as such. I believe also that as he has been a law abiding industrious citizen since he left the Army in August, 1942, it is deplorable that he should be taken from his home and work and prosecuted for his desertion at this late date, particularly as he made no effort at any time to conceal his existence or whereabouts. I also feel

that in view of all the circumstances of this case that the original sentence meted out to him was excessive, unreasonable and inhuman, and that his case should be treated with the utmost leniency. If it were the province of this Court to mete out the punishment, if any, in this case, the sentence imposed would be the slightest legally possible. Having no further jurisdiction over this matter, however, I can only express the hope that any military tribunal or executive official exercising jurisdiction over the petitioner in the future will give consideration to the views expressed herein.

Wherefore, the Petition for Writ of Habeas Corpus will be dismissed, the Writ of Habeas Corpus heretofore issued will be discharged, and the petitioner remanded to the custody of the respondent; but pending an appeal from the decision of this Court he shall be enlarged upon recognizance with surety in the sum of $500.00 for appearance to answer the judgment of the appellate court.