**COX v. WEDEMEYER.**

No. 12565.

United States Court of Appeals
Ninth Circuit.

Nov. 21, 1951.

---

Victor E. Cappa, San Francisco, Cal., Herbert C. Jones, San Jose, Cal., for appellant.

Chauncey F. Tramutolo, U. S. Atty., Joseph Karesh, Asst., U. S. Atty., San Francisco, Cal., for appellee.

Before BONE, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

This is an appeal from an order dismissing a petition for writ of habeas corpus. The petition alleged that the appellant Cox was unlawfully imprisoned under the color of authority of the commanding officers of the Sixth Army, Presidio, San Francisco. The decision of the trial court is set forth in a "Memorandum Opinion" reported 90 F. Supp. 55, which both parties accept as a fair statement of the facts.

That opinion discloses that on June 20, 1941, Cox returned his selective service questionnaire to his local draft board in Santa Clara County, California, pursuant to the Selective Training and Service Act of 1940. In it he stated at the appropriate place that he was conscientiously opposed to participation in military service of any kind. At the time he made no claim to being a minister of religion but five days later he delivered to the local board claim that he was an ordained minister of religion for Jehovah's Witnesses, entitled to a IV–D classification, which he requested. The following February, the Special Form for Conscientious Objectors prescribed by the regulations was sent by the local board to Cox, and on February 19, he filed that form with the board. In it he renewed his claim for exemption as a conscientious objector to both combatant and non-combatant military service.

The local board classified Cox I–A–O (available for non-combatant military service; conscientious objector). Cox appealed from this classification and requested that the appeal board place him in classification IV–D, minister of the gospel. In the first paragraph of the letter by which his appeal was taken he said: "Gentlemen: I hereby appeal from the classification IA–O given me by Santa Clara County Draft Board No. 111 and request that I be placed in class 4–D by reason of the fact that I am a minister of the gospel." The letter made no mention of any conscientious objection to service.

The board of appeal affirmed his classification of I–A–O and held him not to be a minister. It did not consider whether he was a conscientious objector upon the ground that "the registrant does not appeal as a conscientious objector but only because he claims to be a minister of religion." In due course Cox was notified that his I–A–O classification would stand, and pursuant to direction, he reported on June 12, 1942, for induction at the induction station in San Francisco.

Cox testified that he did not take the induction oath. He was moved, with his draft group, to the Presidio at Monterey, and then sent to a basic training camp in Alabama. As soon as he received his first pay check and at the first opportunity, he boarded a train and returned to his home in San Jose, California, where he resided openly for almost seven years until he was arrested by agents of the Federal Bureau of Investigation in May, 1949. The Army had not given his name to the Bureau until April, 1949. When he first returned to San

Jose he told his employers that he had received a medical discharge from the Army.

After Cox's arrest he was turned over to Army authorities and was tried by court-martial for desertion in time of war. His conviction was set aside and a retrial ordered, pending which he brought these proceedings.

In dealing with appellant's contention that his order of induction was void, the trial court held that it had jurisdiction to declare an order of induction void if the record disclosed that there was no substantial basis for the classification order made. The court was of the opinion that there was no such basis for the classification order made by the local board, but that when Cox, in taking his appeal, limited it to the claim that he should have been classified as a minister, "he impliedly, if not expressly, abandoned his claim to be classified as a conscientious objector". In effect, the court approved the propriety of the appeal board's affirmance of the action of the local board.[1]

With respect to this aspect of the case, appellant says that the effect of his appeal was to place the question of his proper classification in its entirety before the appeal board, and that the regulations required the board to review the case and the registrant's whole record *de novo*. Appellant contends that had the board thus proceeded as it was required to do, it would have been obliged to follow the procedure specified in § 5(g) of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 305(g), 1940 Ed., now 50 U.S.C.A.Appendix, § 456(g) and § 627.25 of the Selective Service Regulations. 32 Code Fed.Regs. § 627.25, Cum.Supp.1944. The Regulations mentioned provided that "if an appeal involves the question of whether or not a registrant is entitled to be sustained in his claim that he is a conscientious objector", the appeal board after first determining

whether a registrant should be classified in one of the other classes calling for deferment, and after determining that he does not belong in any of such classes, "shall transmit the entire file to the United States district attorney * * * for the purpose of securing an advisory recommendation of the Department of Justice. * * *"

It is our view that appellant's contention in this respect is correct. We think the trial court erred in holding that Cox abandoned his right to be classified as a conscientious objector.

At the time the appeal was taken and considered by the appeal board, the regulations, § 627.26(a), provided: "The board of appeal shall classify the registrant, giving consideration to each class in the order in which the local board gives consideration thereto when it classifies a registrant. (See part 623.)" Part 623 thus referred to, recounted in considerable detail the procedure which the local board must follow in classifying registrants. It directed the local board to consider in a stated order the various classes provided by the regulations. The local board was to determine, item by item, whether the registrant belonged in any of them. Among the classes thus to be considered by the local board was class IV–E. Regulation § 623.51(e)(2) provided: "[I]f such registrant has been found to be a conscientious objector to both combatant and non-combatant military service, he shall be classified in class IV–E".

We think that the meaning of these regulations was that the board of appeal was required to classify the registrant *de novo* on the basis of his whole Selective Service record.[2] Our view with respect to this matter has been reinforced by the consideration that the procedure established under the Selective Service Act of 1940 was designed to fit the needs of registrants unskilled in legal procedure, many of whom, too, where wholly or partially il-

---

1. The court found, and the record disclosed, that there were no grounds for sustaining Cox's claim to be a minister of religion.

2. Cf. United States v. Pitt, 3 cir., 144 F.2d 169, 172: " * * * an appeal board must hear and dispose of each case de novo in the same manner as must an appellate tribunal on an appeal in admiralty * * *." Cramer v. France, 9 cir., 148 F.2d 801, 805: "The action of the board of appeals completely supersedes the action of the local board in classifying [applicant] * * *."

literate, and none of them represented by counsel. " * * * [I]t is evident that Congress and the administrative officials in charge of the Selective Service System intended not only to guarantee a right of appeal to registrants but also to permit registrant to take appeals freely and with a minimum of procedural formality * * *." Chih Chung Tung v. United States, 1 Cir., 142 F.2d 919, 921. It does not conform with the letter or spirit of the Act or of the regulations, to construe the language of appellant's letter under the same strict rule of interpretation applicable to a formal assignment of errors.

■ It follows that the appellant never had a hearing before the board of appeal upon the question of whether he was entitled to a IV–E classification. Although the opinion of the trial judge contained a statement that "there was no basis for the classification order that was made", and that, "I feel that in view of the fact petitioner was a sincere conscientious objector according to the finding of the chairman of his own local board he should have been classified as such", we do not here go so far. It might well be that had the board of appeal considered the question, it would have come to the conclusion that appellant was not entitled to a IV–E classification. Such might have appeared from the registrant's own statements to the hearing officer. What leads us to the conclusion that the induction order was void is not that the evidence compelled a IV–E classification, but that the board of appeal refused to consider the question of registrant's right to such classification.

This brings us to the question whether the appellant's subsequent acts, following his report for induction, operated, by way of waiver, consent, or otherwise, to subject him to the jurisdiction of the army or of a court–martial.

After referring to the taking of the induction oath (which the court held Cox did in fact take), to his proceeding from the Presidio in San Francisco to Monterey, and thence to Camp Rucker, in Alabama, to the fact that he wore the army uniform, utilized free mailing privileges, and accepted a pay check, the trial court's opinion stated: "Moreover, it might be said also that these circumstances show that his conduct after leaving the induction center amount to a waiver of any irregularity in his induction". The court thought that appellant's testimony that he did not take the induction oath [3] was discredited because of its lack of corroboration from other sources. The court thought significant appellant's failure to tell his local board that he had not taken the oath and his failure to make any written statement to that effect to any official in the Army.

Appellant testified that even after reporting at the Presidio in San Francisco he was promised that he would be given a hearing on his exemption claims at Monterey and that at Monterey he was given a similar assurance as to a hearing at Camp Rucker. He testified that he advised his commander at Camp Rucker that he was a conscientious objector and had refused to take the oath, and said he was not a soldier. He refused to carry a gun and was compelled by his captain to carry 2 x 4 timbers nailed together, in place of a gun. After a period of this he rebelled and was thrown into a stockade.[4] His captain tried to persuade him to drop his convictions but without success and as soon as appellant received his first and last pay check, which furnished him funds for a railroad ticket, he went home.

■ In our opinion the evidence is insufficient to support a finding that appellant waived any irregularity in his induction. His acts following induction, such as wearing the uniform, were those in respect to which he had no choice. His own testimony, not contradicted by any other witness, was that he continually asserted his refusal to serve as a soldier. There is no evidence of such express or voluntary

---

3. At the time the regulations were the same as those which controlled the decision in Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917.

4. Appellant was the only witness as to what transpired at Monterey and at Camp Rucker. The court found that he "refused to take part in military training."

924

waiver as appeared in Mayborn v. Hefle-bower, 5 cir., 145 F.2d 864 or in Sanford v. Callan, 5 cir., 148 F.2d 376.[5]

With respect to the question of whether appellant actually took the induction oath, it is significant that no officer present at the time the oath was propounded to his group appeared to testify in contradiction of appellant's assertion that he did not take it. Cf. Lawrence v. Yost, 9 Cir., 157 F.2d 44.

We do not place particular significance on the failure of the appellant to tell his local board that he had not taken the oath, or upon his failure to make a written statement to that effect to the army officers. However, we do not think it necessary to consider the question whether the court's finding that appellant actually took the induction oath is clearly erroneous, for we believe it immaterial whether he did or did not submit to the induction oath.

 Up to the point of reporting for induction, the acts of the appellant in complying with the orders presented to him were no more than those required in order to exhaust his administrative remedies. Falbo v. United States, 320 U.S. 549, 64 S. Ct. 346, 88 L.Ed. 305. Whether he actually took the oath and thereby went one step farther than necessary for this purpose is not significant here, for he was not prosecuted for violating § 11 of the Selective Training and Service Act as were defendants in the Estep and Gibson cases.[6]

In the Gibson case the question arose as to whether the inductee, there prosecuted under § 11, had gone beyond what was required for the purpose of exhausting the administrative process, by entering a camp and thereby subjecting himself to the camp's jurisdiction. The decision turned upon the fact that the conscientious objector camp there involved was not a military institution. But it was conceded, even by the Government, which insisted that Gibson had gone too far, that the only consequences of that would be that he would be remitted to his remedy by petition for habeas corpus. There was no question as to the correctness of the rule stated by the court that "It has been clearly established that the remedy by way of habeas corpus is open to the wrongfully inducted member of the armed forces to secure his release". 329 U.S. at p. 359, 67 S.Ct. at page 311, 91 L.Ed. 331.

We think that appellant comes within that rule and accordingly he was entitled to the relief prayed for in his petition.

The order appealed from is reversed.

5. In each of those cases the inductee apparently changed his mind and promised his commanding officer that he would be a good soldier.

6. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331.