**CORRIGAN**

v.

**SECRETARY OF ARMY et al.**

No. 14038.

United States Court of Appeals Ninth Circuit.

March 5, 1954.

J. B. Tietz, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Asst. U. S. Atty., and Clyde C. Downing, Asst. U. S. Atty., Los Angeles, Cal., for appellees.

Before STEPHENS, BONE, and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Ronald J. Corrigan, hereinafter called "petitioner", upon relation of his mother, through a petition for the issuance of the writ of habeas corpus, seeks his release from restraint of the United States Army officers who hold him as a member of the United States Armed Services. A hearing was had on the petition, the return thereto and an order to show cause pursuant to stipulation that the return should be considered as a traverse and that the proceedings should have the same force and effect that the issuance of the writ would have had, had it issued and had the hearing been held thereon. However, petitioner was present throughout the proceedings. The court declined to order petitioner's release and instead dismissed the petition. Petitioner appealed.

The issue of fact is whether petitioner was ever inducted into the Service.

On the 15th day of April, 1953, petitioner, having been regularly processed through the Selective Service law, 50 U.S.C.A.Appendix, § 451 et seq., and declared a Selectee with the A-1 classification, was, with about fifty Selectees, taken to a room around 9:00 A. M. where he was given physical and psychological examinations and near the middle of the day, the fifty Selectees were directed to take places in folding chairs which had been placed out in the room. The chairs occupied a space about twelve by eighteen feet in rows twelve inches apart with a center aisle the width of a chair. Petitioner was in the rear row.

Captain Earl S. Beydler entered the room and gave them a short orientation talk and then addressed them as follows: "You are about to be inducted into the Armed Services of the United States. In just a moment I will ask you to stand and I will call off each of your names. As I call your name I want you to answer 'present' and to take one step forward. The step forward will constitute your induction into the Armed Services

of the United States—into the Army."[1] The call was completed and the men were given the accustomed oath. Petitioner claims that he did not take a step forward nor did he raise his hand and take the oath. However, he made no protest at the time of the ceremony.

It is not contended that either the step forward or the taking or giving of the oath is required by the Selective Service Act as necessary to induction. As said in Billings v. Truesdell, 1944, 321 U.S. 542, 559, 64 S.Ct. 737, 746, 88 L.Ed. 917; "a selectee becomes 'actually inducted' within the meaning of § 11 of the Act[2] when in obedience to the order of his board and after the Army has found him acceptable for service he undergoes whatever ceremony or requirements of admission the War Department has prescribed." Therefore, since the selectee is subject to civil authority until the moment of completion of the induction, at which moment he becomes subject to military authority, it is highly important that such moment should be marked with certainty. See Billings v. Truesdell, 1944, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917.

For a time the oath marked the dividing line between the civilian and military status, but difficulties and uncertainties arose as to whether, in fact, the selectee had taken the oath. See our opinion in Lawrence v. Yost, 9 Cir., 1946, en banc, 157 F.2d 44. Thereafter, the regulation (Army Special Regulation No. 615–180–1, paragraph 23), providing for the *step forward*, was promulgated.

 However, one may emerge from a selectee to a soldier without taking the step forward; that is, by conduct consistent with the soldier status;[3] but the fact of the step forward, whether or not it was taken, is of high importance in this case. As to that issue of fact, it is claimed by petitioner that it was impossible for the men, other than those in the front row, to step forward and the physical set-up and the testimony practically demonstrate the truth of the claim. The inducting Captain testified in answer to a question as to space, "There is space, not much." "Q. You mean he could shuffle? A. Correct."

At no time does the inducting Captain claim that he saw petitioner take the step forward. As to the procedure, he testified on direct examination that when he calls a name at induction ceremonies, "I wait for a response, * * * or if they are near the front of the room where I can see them, I see if they step forward." Afterward, he would call the next name. "Q. Did you at any time look to see if a man had taken a step forward? A. I look up each time I call a name. Q. What do you look for when you look up? A. For movement, for a man stepping forward. * * * Q. On that day did you see any man fail to step forward after his name was called by you? A. No." On re-cross-examination, Captain Beydler was asked, "Can you tell us that you recall whether or not you saw this petitioner move forward on April 15—after you called his name?" The Captain answered, "No, I cannot."

Petitioner testified that his mother and grandmother belonged to Jehovah's Witnesses; on re-cross-examination petitioner was asked, "Were you a member of the enlisted reserves in the Army of the United States?" To which he replied in the affirmative. The record does not reveal how long or under what circumstances he was in such service. On

---

1. The quotation is from the affidavit of Captain Earl S. Beydler which was attached to the return and made a part thereof. The affidavit was stipulated as the Captain's evidence in chief. The procedure followed by the Captain was exactly in accord with Army Special Regulations 615–180–1, paragraph 23, issued by the Department of the Army April 10, 1953.

2. Selective Training and Service Act of 1940, 54 Stat. 894, 50 U.S.C.A.Appendix, § 311; now 50 U.S.C.A.App. § 462, Selective Service Act of 1948, 62 Stat. 604, 622.

3. Mayborn v. Heflebower, 5 Cir., 1945, 145 F.2d 864; Sanford v. Callan, 5 Cir., 1945, 148 F.2d 376; cf. Cox v. Wedemeyer, 9 Cir., 1951, 192 F.2d 920, 923–924.

cross-examination, petitioner was asked, "When did you become a conscientious objector?" Petitioner answered, "While sitting in the room. I just thought. The material together, I would say, filled my mind, and this is one thing I wanted to do. * * * Q. When your name was called did you take a step forward? A. No." He also testified that some of the selectees shuffled their feet or didn't move when their names were called.

Petitioner on cross-examination was asked, "When was the first time that you advised anybody in the Army that you were a conscientious objector? * * * A. After the ceremony. The Court: What do you mean 'after the ceremony'? The Witness: Well, after the ceremony was over, I thought—well, there isn't much use in making a scene, and I just walked outside and told the Captain in charge. * * * I told him I did not take [the] oath or step forward. * * * He says, 'No. You are in the Army.' * * * Q. Isn't it a fact that when you saw Captain Beydler, after leaving the induction room that you told him you had changed your mind, that you were now a conscientious objector? A. I didn't say 'I changed my mind', No, sir. * * * I said 'I am'."

Sergeant Frias, the chief coordinator at the induction station, testified that petitioner approached him on the floor of the induction room saying he was a conscientious objector. The Sergeant asked him if he had just been inducted and he answered "Yes", to which the Sergeant responded, "I said, 'It is too late. I can't do anything for you'."

After that, according to petitioner's testimony, he made three telephone calls and then told a Sergeant, "I am going home". Petitioner further testified, "I had some friends and I went over to see and talked with them. * * * I went over to another friend's and stayed all night. * * * I stayed another day and then I went on home."

Petitioner did not respond to the call to board the bus for the railroad station the next morning, whereupon he was noted as an "absentee". Petitioner was forceably taken from his home by military personnel, put in the Post stockade at Camp Irwin, and then transported to Camp Roberts a few weeks thereafter. The court asked the witness, "Have you been with that training company [at Camp Roberts] since? The Witness: No. That was a Thursday, and then Friday morning they took me to the orderly room and to the company commander and I refused the company commander['s suggestion that I submit to training]. * * * That was about 5:10. I went back to the M. P. lock-up at Camp Roberts. I stayed there until Sunday morning. Sunday morning— The Court: Yesterday? The Witness: Yes, yesterday at 10:45. And then I stayed at this M. P. lock-up Sunday and then here today. * * * The Court: Did you ever tell the Colonel that, as long as you did not have to bear arms, you would be willing to undergo training? A. I told him I would not accept any training."

■■ We are of the opinion that the unnecessarily crowded set-up in the induction room made it physically impossible for the inducting officer to have seen whether petitioner took the step forward and that it was in fact impossible for petitioner to take a step forward. Therefore, we think, the court's finding on this factual issue was in error. The evidence reveals no act after the induction ceremonies from which it could be found that petitioner had in fact acquiesced in induction,[4] but on the contrary his conduct is entirely consistent with his claim that he did not submit to induction, and is not consistent with any theory of acquiescence. However, the court made no finding on the subject of acquiescence.

■ We hold that the evidence does not support the conclusion of the trial court that petitioner was inducted into the Armed Services of the United States.

---

4. See footnote 3, supra.

The judgment is reversed and remanded with instructions to order petitioner's release from the custody of the Army officers.

Reversed and remanded.