**Jack Warren BRADLEY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14357.**

United States Court of Appeals, Ninth Circuit.

Dec. 29, 1954.

J. B. Tietz, Los Angeles, Cal., Hayden C. Covington, Brooklyn, N. Y., for appellant.

Laughlin E. Waters, U. S. Atty., Hiram W. Kwan, Louis L. Abbott, Manuel L. Real, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and WALSH, District Judge.

WALSH, District Judge.

Bradley was convicted of violating the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq. by knowingly failing and refusing to submit to induction into the armed forces of the United States. In this appeal, he attacks his conviction upon the several grounds which will be hereinafter stated and considered.

Bradley registered with his local board at Long Beach, California, on September 20, 1950, two days after his eighteenth birthday. On October 26, 1951, he filed with that board his classification questionnaire, wherein he signed Series XIV certifying that he was a conscientious objector, and the special form for conscientious objectors, Selective Service System Form No. 150. In his answers to the questions in Form No. 150, appellant claimed to be opposed to both combatant and noncombatant military service. He stated that he believed in a Supreme Being and that such belief involved duties which to him were superior to duties arising from any human relation; and, to describe the nature of his beliefs, he said that he was not to take part in worldly affairs and that his duty was to serve God rather than his country. He ex-

plained that he was a member of Jehovah's Witnesses and that he relied upon his mother for religious guidance. He specified his attendance at religious meetings and his preaching activities as the actions and behavior in his life which demonstrated the consistency and depth of his religious convictions. He stated that he had never given public expression to his views as a conscientious objector. He listed the names and addresses of two relatives as references who could supply information as to the sincerity of his professed convictions against participation in war.

On January 22, 1952, the local board classified appellant as I–A (available for military service), whereupon appellant, by letter, appealed from the I–A classification and requested a personal appearance before the local board. With his notice of appeal, appellant submitted a letter [1] from one Conradi, Company Servant of the Simi Company of Jehovah's Witnesses, wherein Conradi stated that he had not been acquainted with appellant very long but, during their short acquaintance, appellant had been very faithful in preaching activity and in attending Company meetings and he was convinced of appellant's sincerity "as a Christian and a student of the ministry". Appellant appeared personally before the local board on February 11, 1952, and a memorandum regarding such appearance was made by the board and placed in appellant's file. Immediately following appellant's personal appearance, the local board again classified him as I–A and notified him of the new classification.

On February 18, 1952, appellant's file was forwarded to the appeal board and that body, after reviewing the file and determining that appellant should not be classified as either I–A–O (conscientious objector available for noncombatant military service only) or I–O (conscientious objector available for civilian work contributing to the maintenance of the national health, safety, or interest), on April 7, 1952 referred the file to the Department of Justice for the purpose of obtaining an advisory recommendation from the Department. On August 7, 1952, appellant was given the regular pre-induction physical examination at the Armed Forces Examining Station in Los Angeles, with the result that he was found fully acceptable for induction into the armed services. On March 19, 1953, the Department of Justice made a written recommendation adverse to appellant's conscientious objector claim to the appeal board. In its recommendation, the Department summarized the results of an F.B.I. investigation of appellant and listed details of a hearing given appellant before a hearing officer of the Department. In the latter regard, mention was made of the fact that appellant told the hearing officer he would fight in self-defense and that his conscientious objector position was his own philosophy. The hearing officer was reported to have concluded that appellant was not a conscientious objector by reason of any deep-seated religious conviction but that, if his claim was sincere, it was only an outgrowth of his personal philosophy. The Department found that appellant's objections to combatant and noncombatant service were not sustained and recommended that his claim for exemption be denied, stating specifically that its finding was based upon a consideration of the entire file and record in the case.

On April 9, 1953, the appeal board classified appellant as I–A and he was notified of such classification on April 13, 1953. Thereafter, he was ordered to report for induction on May 18, 1953.

On the date fixed in the order, appellant reported at the induction station, where he was fingerprinted and

---

1. This document is erroneously styled an affidavit in appellant's brief. Its execution was acknowledged by Conradi before a Notary Public, but it was not sworn to.

given a new physical examination. The new examination resulted in his being again found acceptable for service. At this point, appellant was asked if he was a conscientious objector or one who didn't believe in fighting and he replied in the affirmative. Thereupon he was sent to a sergeant [2] in another room in the station, who explained to him the penalty for refusing to submit to induction. Appellant then, at the request of the sergeant, wrote and signed the following: "I refuse to be inducted into the Armed Services of the United States".[3] Appellant thereupon left the induction station. In due course, the authorities at the station and appellant's local board reported to the United States Attorney that appellant had refused to submit to induction. His indictment, trial, and conviction followed.

■ Appellant's first contention is that since he was not given an opportunity to go through the precise induction ceremony required by army regulations (Army Special Regulation No. 615–180–1),[4] he is not guilty of refusing to submit to induction. He concedes that the carrying through of the induction ritual would have been a vain and idle thing in his case because of his resolution not to submit, but he argues nevertheless that his refusal was somehow less a refusal because the ritual was not carried out in all of its fullness. We cannot agree.

Proof of the full, formal ceremony might be essential if we were asked to find that appellant had been transferred from a civilian to a military status, but we do not think the same requirement exists with regard to the question which confronts us now. Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917; United States v. Mansavage, 7 Cir., 178 F.2d 812, 818; Corrigan v. Secretary of the Army, 9 Cir., 211 F.2d 293. It must be remembered that the issue here is not whether appellant was inducted into the armed forces, but whether he refused to be inducted. The evidence shows that appellant reported at the induction station and proceeded through the induction process to the point where it was determined finally that he was acceptable for service. All that remained was his induction or his refusal to be inducted. He was told the penalty for refusal to submit to induction, and he stated understandingly and positively that he would not submit.

The regulation providing for the formal "one step forward" had its origin in

2. At the trial, appellant displayed complete unfamiliarity with the rank of the military personnel with whom he dealt at the induction station. He described one person with whom he talked as, "this corporal, or colonel or whoever it was". Thus, while he testified that he "believed" it was a sergeant who requested him to write his statement and we are assuming the accuracy of his testimony on this point, the statement is witnessed by both a captain and a sergeant, and it may very well have been the captain who asked him to write the statement.

3. At his trial, appellant testified that if he had been asked while at the induction station to take the usual "one step forward" to evidence and constitute his induction into the Armed Services, he would not have stepped forward or submitted to induction.

4. Paragraphs 23 and 27 of the regulation are pertinent and they provide in sub-

stance: The induction officer is to assemble all the selectees, advise them that they are about to be inducted into the armed services and inform them that each is to take one step forward as his name is called and that such step will constitute his induction. If a selectee refuses to step forward when his name is called, the induction officer is to remove such selectee quietly and courteously from the presence of the group about to be inducted. The officer then explains to him that his refusal to submit to induction is a felony and that upon conviction therefor he may be punished by fine or imprisonment, or both. The induction officer is then to again request the selectee to take a step forward when his name is called. If the selectee again refuses to take the one step forward, the induction officer is to ask the registrant to make a signed statement, in his own handwriting, to the effect that he refuses to submit to induction.

the difficulties and uncertainties which formerly plagued the military authorities as to whether, in fact, a selectee had taken the oath, Corrigan v. Secretary of the Army, supra; and it had for its object the separation with certainty of those who would not be inducted from those who would. Its relaxation in appellant's case in no manner prejudiced him.[5] He did, advisedly and unequivocally, what he came to the induction station to do—he refused to submit to induction.

The next contention advanced by appellant is that the appeal board had no basis in fact either for denying his claim for classification as a conscientious objector or for classifying him in Class I–A. He argues that the I–A classification given him by the appeal board[6] constituted arbitrary and capricious action on the part of the board and was, therefore, invalid; that without a valid classification to support it, the order to report for and submit to induction was a nullity; and that appellant's failure and refusal to obey the void order constituted no offense. We will preface our consideration of this facet of the case with a reference to certain principles which bear importantly upon it.

Under the Universal Military Training and Service Act, a deferment is not a matter of right but of legislative grace; and, accordingly, the burden is upon a registrant claiming exemption to establish clearly that he is entitled thereto. 32 C.F.R., Section 1622.1(c); Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 98 L.Ed. 132; Richter v. United States 9 Cir., 181 F.2d 591, 593; United States v. Schoebel, 7 Cir., 201 F.2d 31, 32; United States v. Wider, D.C., E.D.N.Y., 119 F.Supp. 676, 682. A right to exemption as a conscientious objector is not established merely by proving affil-

iation with a particular religious sect, since it is the registrant's belief and his sincerity therein, rather than the nature of the teachings of a religious faith, with which the draft board is ultimately concerned. United States v. Simmons, 7 Cir., 213 F.2d 901, 904; Gonzales v. United States, 6 Cir., 212 F.2d 71, 72. The very nature of the duty assigned to a draft board when it is required to pass upon a claim of conscientious objection, viz.: the determination of what a man believes and the conviction with which he believes it, contemplates that the decision of the board will have as its basis not direct proof of objective facts, but inferences drawn from all of the evidence before the board. American Communications Ass'n v. Douds, 339 U.S. 382, 411, 70 S.Ct. 674, 94 L.Ed. 925. Logically, then, when a reviewing court is considering whether a board's denial of a conscientious objector claim in a given case had basis in fact, the board's action is entitled to the support of any inference of sham or insincerity on the part of the registrant which the board could have drawn validly and fairly from the record upon which it acted. United States v. Simmons, supra, 213 F.2d at page 906.

The record upon which the appeal board made its classification of Bradley consisted of the documents which we have described above, i. e., his classification questionnaire, Selective Service System Form No. 150, the Conradi letter, Bradley's letter requesting a personal appearance before the local board, the memorandum of his personal appearance, and the recommendation of the Department of Justice. Laying aside the Department recommendation, which was in accord with the appeal board's classification and which will be considered hereinafter, we search the balance of the record for support for the implicit finding of the appeal board

---

5. Cf. United States v. Hagaman, 3 Cir., 213 F.2d 86, 91.

6. It is this classification with which we are here concerned. Hinkle v. United States, 9 Cir., 216 F.2d 8; Goetz v. United States, 9 Cir., 216 F.2d 270.

of insincerity on the part of Bradley. Dickinson v. United States, supra, 346 U.S. at page 396, 74 S.Ct. 152.

In his classification questionnaire, appellant stated that he had been a minister of the Jehovah's Witnesses sect since March, 1947. In the Form No. 150, which was filed with the classification questionnaire, he was asked to state fully "When, where, and how" he became a member of Jehovah's Witnesses and he answered: "I learned about truth in 1940—Long Beach, Calif. I learned from my mother and from study". Taken together, these answers would be understood only as representations that appellant had been affiliated with Jehovah's Witnesses since 1940 and that his attachment to and activity in the sect were of such degree by March, 1947, that he had reached the status of a minister. Significantly, though, appellant omitted any answer to the question in Form No. 150 asking the name, title, and present address of the pastor or leader of the church, congregation, or meeting where he customarily attended. Significantly, too, although Form No. 150 directed that it be answered fully, he failed to make any answer to the question asking under what circumstances, if any, he believed in the use of force.

On January 29, 1952, in his letter requesting a personal appearance after he had been classified by the local board as I–A, appellant gave a very different picture of his connection with Jehovah's Witnesses. After pointing out that his mother had been an active Witness for 12 years and had given him scriptural training during that time, he described his own relationship to the sect: *"Now I am associated with Jehovah's Witnesses organization, and have been active as a Witness for several months"*. (Emphasis supplied). With his letter, he submitted the letter from Conradi,[7] the person whose name and address he had withheld when he was claiming long-time membership and ministerial status in Jehovah's Witnesses; and it, also, limited to the very recent past the claim of activity by appellant as a member of the sect. A comparison of this new information with other material in the draft board file made one thing plain —appellant's religious activity was coincident with activity on the part of his local board toward determining his availability for military service.[8] From this record it could be inferred, fairly and validly, that Bradley's was a case, not alone of recent conversion, Schuman v. United States, 9 Cir., 208 F. 2d 801, 805, but of recent conversion glossed by an effort to withhold or disguise the true situation. Nor could the inference be avoided by putting down to inadvertence the defects and shortcomings in the Form No. 150, since appellant said of the form in his letter regarding his personal appearance, "I realize that I did not give much information on that form".

The appeal board could also have found support for its classification of appellant in the memorandum of his personal appearance before the local board, which was substantially a verbatim transcript of that proceeding. The purposes for which appellant was afforded the opportunity to appear were to permit him to discuss his classification with the board, to direct attention to information in his file which he felt the board had either overlooked or failed to weigh properly, and to present any new information which he believed would assist the board in determining his proper classification. Far from doing this, his principal contribution to the meeting was to answer the board's questions with questions of his own. It can be

7. Incidentally, this was the only documentary evidence having an origin other than appellant himself which was ever submitted to the draft boards. In view of the boards' experience with cases of Jehovah's Witnesses generally, the slenderness of this reed might well have been significant to the boards. United States v. Simmons, supra, 213 F.2d at page 906.

8. Bradley's classification questionnaire came to him about October 1, 1951.

fairly said of his conduct and attitude that they fell considerably short of carrying the burden which was upon him to show good faith in his claim. On the whole record, we find that the appeal board had basis in fact for its classification of appellant.

Appellant next insists that the Department of Justice recommendation was illegal and that it so colored and affected the action of the appeal board in classifying him that it rendered the classification also illegal. The argument upon the point runs like this: The hearing officer found, contrary to law, that Bradley could not be a conscientious objector because he believed in the use of force for self-defense. The hearing officer found, without any evidence to support the finding, that Bradley's conscientious objector claim, if it was sincere, was not based on any deep-rooted religious conviction but was only an outgrowth of his personal philosophy. The Department of Justice bottomed its recommendation on the improper findings of the hearing officer; and the appeal board, in turn, based its classification on the recommendation thus tainted by the hearing officer's findings.

■ But, to begin with, the hearing officer made no finding that Bradley's belief in the use of force for self-defense negatived his claim of conscientious objection.[9] He mentioned as a fact that Bradley would fight in self-defense, but he drew no conclusion from that fact adverse to the conscientious objector claim. Further, the hearing officer's finding that any conscientious objector claim of Bradley's was an outgrowth of his personal philosophy was supported by the interview with Bradley and, in fact, by Bradley's own statement to the hearing officer. True it

is, that such evidence was in conflict with other evidence in Bradley's file, but a finding based upon conflicting evidence is a very different thing from a finding unsupported by any evidence. And, even if it were conceded that the last-mentioned finding of the hearing officer was unsupported, it would be of no aid to appellant because the Department of Justice recommendation, by its own terms, was based not on such finding but upon "consideration of the entire file and record".

■ Finally, even if we agreed that the Department of Justice recommendation was based upon an erroneous finding that appellant's conscientious objector claim was not based on religious conviction, we could not agree that the appeal board's classification was invalid for that reason. Before the appeal board referred the case to the Department, it had itself reviewed the entire file and determined that Bradley was not a conscientious objector. We must assume that when the board received the Department report it was given consideration;[10] but there is nothing in the record which would justify us in finding that the recommendation was followed. To the contrary, what the record shows is that the board reaffirmed its earlier determination as to Bradley's conscientious objector claim after notice that the Department of Justice was in accord.

■ One additional point remains to be considered. Appellant asserts that the appeal board denied him due process of law by not giving him an opportunity to answer the recommendation of the Department of Justice before finally classifying him. We find no merit in this contention. Gonzales v. United States, supra; White v. United States, 9 Cir., 215 F.2d 782, 787. Al-

9. This fact constitutes a major difference between our case and Shepherd v. United States, 9 Cir., 217 F.2d 942. In Shepherd, the hearing officer ruled that a belief in the right of self-defense and in the righteousness of theocratic warfare necessarily negatived a conscientious objection.

10. 50 U.S.C.App., Sec. 456(j), 50 U.S.C.A. Appendix, § 456(j); Selective Service System Regulations, Sec. 1626.25(c); 32 C.F.R. Sec. 1626.25(c).

though the White case involved an alleged deprivation of due process by a refusal of access to the F.B.I. investigative report, the court's reasoning in that case and its exposition of the true function of the Department of Justice in selective service cases compel the conclusion that there was no denial of due process here.

The judgment of the court below is affirmed.