Londell BROWN

v.

Major General K. L. REAVES, U.S.A.T.C., Commanding Officer, Ft. Polk, Louisiana.

Civ. A. No. 12278.

United States District Court
W. D. Louisiana,
Lake Charles Division.

Dec. 29, 1966.

Charles Morgan, Jr., and M. Laughlin McDonald, Atlanta, Ga., Benjamin E. Smith, New Orleans, La., for petitioner.

Edward L. Shaheen, U. S. Atty., Q. L. Stewart, Asst. U. S. Atty., Shreveport, La., for defendant.

EDWIN F. HUNTER, Judge:

This is a companion case of No. 12,279 decided this date. Because of divergencies in the facts, we have considered the cases by separate opinions. Here, too, we are dealing with a habeas corpus applicant seeking release from restraint of Army officers who hold him as a member of the Armed Services. Petitioner's allegations are serious and their cumulative effect is that he is being denied basic rights guaranteed by the Constitution.[1] The crux of petitioner's contentions are two-fold: (A) that the Selective Service Board did not furnish him with the appropriate SSS Form No. 150 so as to permit him to claim the conscientious objector exemption; (B) that the Army acted in an arbitrary, capricious and unconstitutional manner in denying him a discharge as a conscientious objector. Of import here is the sequence of events: (1) On January 27, 1964 Brown registered with local Board No. 26, Hot Springs, Arkansas. No request was made for exemption. (2) On February 18, 1964, he was classified 1-A. (3) According to the records of the United States Army and Selective Service Board No. 26, petitioner was inducted into the Army on September 27, 1965 at the Armed Forces Induction Station, Little Rock, Arkansas. (4) On October 1, 1965, he arrived at Ft. Polk and was assigned to a unit for Base Combat Training. (5) At this time, the question was asked of all present, if anyone was a conscientious objector and it was then for the first time that Brown stated his conscientious objection. (6) He then, with the aid and assistance of pertinent Army personnel, submitted his request for separation on the basis of his being a conscientious objector. (7) The request was recommended for disapproval by petitioner's chain of command and was finally denied by the Adjutant General on January 11, 1966. (8) This petition was filed on September 6, 1966.

## DID APPLICANT NOTIFY HIS LOCAL BOARD THAT HE WAS A CONSCIENTIOUS OBJECTOR?

■ The basic facts are clear enough and a lengthy discussion of the detailed minutiae would serve only to divert attention from the other issues here. The record convinces us that petitioner never claimed to be a conscientious objector until after his induction and after he became stationed at Ft. Polk, Louisiana. We find this as a fact.

## DID THE DENIAL OF APPLICANT'S REQUEST FOR DISCHARGE DEPRIVE HIM OF BASIC RIGHTS GUARANTEED BY THE CONSTITUTION?

On November 8, 1965, Brown formally requested a discharge on the assertion that he was a conscientious objector. This request was recommended for disapproval by petitioner's chain of command and was finally denied by the Adjutant General's Department of the Army. Counsel for Brown vigorously argue that the record here reveals that the Army made membership in a church a determinative factor in their decision and thereby denied him full protection of the law of the land as set out in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). With equal vigor counsel insists that the Army violated the free exercise and establishment clauses because its decision has the effect of making church membership and church attendance compulsory to the conscientious objector.

■ Insofar as we can ascertain, there are no reported cases involving a similar constitutional attack on a military denial of a conscientious objector status. Concededly, military service, like taxation, is a part of the price of civilization from which no one has a constitutional right to exemption. Ex-

---

1. Federal District Courts have jurisdiction over such applications. 28 U.S.C.A. § 2241.

emption is a matter of legislative grace. Congress has, in accordance with long-standing policy, excused from "combatant training and service" any person who "by reason of religious training and belief, is conscientiously opposed to participation in war in any form." 50 U.S.C.A. App. § 456(j).

Selective Service Regulations provide that a claim for conscientious objector status must be made before the individual concerned has been notified to report for induction. United States v. Taylor, 351 F.2d 228 (6th Cir., 1965). The Army, too, has a related regulation which reads as follows:

"Requests for discharge will not be entertained when based solely on conscientious objection which existed, but was not claimed prior to induction, enlistment, or entry on active duty for training. Similarly requests for discharge will not be entertained when based solely on conscientious objection which was claimed and denied by the Selective Service prior to induction." AR 633–20, 3(b).

However, the Department of Defense has seen fit to relax these regulations and by Directive No. 1300.6, dated August 21, 1962, establishes for all personnel of the Armed Forces procedures for processing requests for discharge based on conscientious objection. That Directive was in effect at the time petitioner submitted his request for discharge.

The fundamental constitutional assault on all fronts is pegged on, and its hope of success must rest upon, the premise that the language used by the Adjutant General in denying petitioner's request is proof that the Army in the instant case placed a premium upon church membership, thereby stepping over Mr. Jefferson's wall [2] and the law as set out in Seeger. This contention finds its basis in the following directive:

"1. The application for release as a conscientious objector submitted by Private Londell Brown, is not favorably considered.

"2. Private Brown is not a member of a religious organization or Sect and the evidence as presented does not warrant separation. In reaching this decision consideration was given to the opinion of the Director of the Selective Service System.

"BY ORDER OF THE SECRETARY OF THE ARMY:
"/s/ H. F. Wise
Adjutant General"

 Did the Army, in denying the conscientious objector status to Brown, place a construction on the statutory definition of "religious training and belief" that is contrary to the Supreme Court's holding in Seeger? We briefly review what happened there. Seeger claimed exemption as a conscientious objector under Section 6(j). His conscientious objections were based on a belief in and devotion to goodness and virtue for their own sake and a religious faith in a purely ethical creed. His local selective service board found his beliefs to be sincere and honest but denied his claim because it was not based upon a "belief in a relation to a Supreme Being." He refused to submit to induction and was subsequently convicted in a federal district court.[3] The Court of Appeals for the Second Circuit reversed on the grounds that the statute limiting

2. See Justice Frankfurter's concurring opinion in People of State of Illinois, ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649, wherein it is stated: "Separation means separation, not something less. Jefferson's metaphor in describing the relation between Church and State speaks of a 'wall of separation,' not of a fine line easily overstepped."

3. United States v. Seeger, 216 F.Supp. 516 (S.D.N.Y., 1963).

the exemption to persons who believe in a Supreme Being violated the Due Process Clause of the Fifth Amendment by creating an impermissible classification.[4] The Supreme Court granted certiorari and affirmed the result, but did not pass on the constitutional issue, preferring to place a construction on the statutory definition which voided imputing to Congress an intent to discriminate between those whose opposition to war was based on an orthodox religion and those whose opposition was based on what we loosely refer to as unorthodox religious beliefs. The Supreme Court has told us in no uncertain terms that the exemption is not only for those whose opposition to war is based on an orthodox religion, but is also for those opposed to war because of a sincere and meaningful belief which in their life fills the same place as the belief in God fills in the life of an orthodox religionist.[5] If the Army's action in rejecting Brown's claim was pegged on the proposition that he was not a churchgoer, then that action would not only have violated the rule of *Seeger,* but it would also have violated the Due Process Clause of the Fifth Amendment, as well as the Free Exercise and Establishments Clauses of the First Amendment in that it would have rewarded church membership while discriminating against non-church membership. There is no issue here as to Brown's orthodoxy. The threshold question of sincerity must be resolved in every case. It is, of course, a question of fact—a prime consideration to the validity of every claim for exemption as a conscientious objector.[6] Objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, any fact which casts doubt on the veracity of the registrant is relevant. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428. What are the facts? Brown registered for the draft and was given a questionnaire. He claimed exemption only when the time came for him to begin his basic training. As soon as the Army was notified of his claim, his First Sergeant initiated the paperwork for classification. After all questions were asked and the answers obtained, they were then typed and forwarded to Brown's company commander, who in turn counseled him as requested by Army Regulations. After counseling by the Commanding Officer, Brown then signed the statements and the paperwork was sent forward to the next chain of command. There is nothing that even remotely suggests that Brown received anything other than courteous and proper treatment. Brown was asked to try to get some substantiation of his claimed conscientious objector status, but such was never received, even though three weeks to a month was allotted for this purpose.

So it was that after a thorough study by the Army, and after they had afforded Brown every opportunity to substantiate his case, the request was forwarded to the Adjutant General of the Army. The Adjutant General then directed correspondence to the National Director of Selective Service, requesting an advisory opinion from the National Director concerning the request. General Hershey himself wrote that Brown would not be classified as a conscientious objector if he were being considered by his draft board at that time. General Hershey made no reference whatsoever to religion.

4. United States v. Seeger, 326 F.2d 846 (2nd Cir., 1964).

5. Constitutional law—religious belief necessary for conscientious objector exemption, La.Law Review, Vol. 26, p. 161.

6. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; United States v. Seeger, 380 U.S. 163, page 185, 85 S.Ct. 850, 13 L.Ed.2d 733.

■ The basic fact issue is: Was Brown's discharge denied because he did not belong to a church, or was it denied because the Army came to the conclusion that he was not sincere in his claimed belief? It is true that the Adjutant General did say that Brown was not a member of a religious organization, but also said *"and the evidence as presented does not warrant separation,"* (emphasis ours) and states further that in reaching his decision, consideration was given to the opinion of the Director of Selective Service [who never mentioned the words "religious sect" or "religion"] in his recommendation. Nothing in *Seeger,* or in any other case which has come to our attention, prohibits a fact-finder in endeavoring to ascertain the truth of one's religious belief—to ascertain during the truth-finding process whether or not a man belonged to a church. This would be a novel and paradoxical constitutional doctrine, and we reject it.

## CONCLUSION

Brown is in the Army. His constitutional argument is pegged on the hypothesis that the request was denied because he did not belong to a church or sect. We reject his hypothesis. The totality of the evidence convinces us that the Army rejected the request for discharge because it concluded that Brown's professed "religious belief" was not truly held. It is appropriate in this connection to quote from *Seeger,* 380 U.S. 163, page 185, 85 S.Ct. 850, page 863:

"But we hasten to emphasize that while the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.' This is the threshold question of sincerity which must be resolved in every case. It is, of course, a question of fact—a prime consideration to the validity of every claim for exemption as a conscientious objector. * * * "

For reasons aforesaid, the petition for habeas corpus is denied.