Londell **BROWN** and Warren E. Gilliam, Jr., Appellants,

v.

Stanley R. **RESOR**, as Secretary of the Army, Appellee.

No. 24678.

United States Court of Appeals
Fifth Circuit.

Feb. 6, 1969.

M. Laughlin McDonald, Atlanta, Ga., for appellants.

* Senior Circuit Judge of the District of Columbia Circuit, sitting by designation.

1. The cases were tried separately in the District Court. Gilliam v. Reaves, 263 F.Supp. 378 and Brown v. Reaves, 294 F.Supp. 858. The cases were consoli-

Edward L. Shaheen, U. S. Atty., Q. L. Stewart, Asst. U. S. Atty., Shreveport, La., for appellee.

Before JOHN R. BROWN, Chief Judge, and FAHY * and DYER, Circuit Judges.

DYER, Circuit Judge:

This is an appeal from the denial of the appellants' petitions for writs of habeas corpus[1] in which each petitioner sought his release from the custody of the United States Army on the ground that he was a conscientious objector, and his induction into the Army and his general court martial sentence for refusal to obey a direct order to participate in combat training were in violation of his rights under the United States Constitution. We affirm.

This is our second consideration of the appeal. Prior to the case reaching us the first time, Brown's sentence to dishonorable discharge and three years at hard labor was reduced to a bad conduct discharge and confinement at hard labor for sixteen months. Gilliam's sentence of sixteen months at hard labor and a bad conduct discharge was modified to provide for one year confinement at hard labor in addition to the bad conduct discharge. Subsequently, but also before the appeal was heard, the Secretary of the Army granted clemency to Brown and remitted the unexecuted portion of his confinement. Brown was released from the custody of the Army on July 27, 1967. Gilliam was discharged from the Army on August 7, 1967, and was released from custody on November 8, 1967. We dismissed the appeal as being moot.[2] The Supreme Court granted certiorari, vacated our judgment and remanded the case to us for further consideration in light of Carafas v. LaVal-

dated on appeal, and Stanley R. Resor, as Secretary of the Army, was subsequently substituted for Major General K. L. Reaves.

2. Brown v. Reaves, 5 Cir. 1968, 388 F.2d 682.

lee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed. 2d 554 (1968).[3]

■ *Carafas* laid to rest any doubts concerning the meaning of the words "in custody" as used in 28 U.S.C.A. 2241.[4] There, as here, the petitioner was in custody when the application for habeas corpus was filed with the District Court but petitioner had been released before completion of the proceedings on the application. The Supreme Court held that because of the " 'disabilities or burdens [which] may flow from' petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed upon him.' Fiswick v. United States, 329 U.S. 211, [222, 67 S.Ct. 224, 230, 91 L.Ed. 196] (1946). On account of these 'collateral consequences,' the case is not moot. Ginsberg v. New York, 390 U.S. 629, 633-634, n. 2, [88 S.Ct. 1274, 1277, 20 L.Ed.2d 195] (1968); Fiswick v. United States, *supra*, [329 U.S.] at 222, n. 10, [67 S.Ct., at 230]; United States v. Morgan, 346 U.S. 502, 512-513, [74 S. Ct. 247, 253, 98 L.Ed. 248] (1954)." [Footnote omitted.] Carafas v. LaVallee, *supra*, at 237, 238, 88 S.Ct. at 1559.

We entertain no doubt that the "collateral consequences" which may flow from appellants' convictions and to which we alluded in our original opinion, i. e., that "in many states they will not be able to vote, sit on juries or run for public office," bring this case squarely within the principles enunciated in *Carafas*. We therefore proceed to the merits.

On January 17, 1964, ten months after he was required to do so,[5] Brown registered with his local board. Both Brown and his mother contended that they informed the clerk of the board that Brown was a conscientious objector. Several days after his registration Brown completed his classification questionnaire and furnished it to the board. He did not complete Series VIII of the questionnaire pertaining to conscientious objectors and no information concerning a request for this status appears in his Selective Service File.

On February 18, 1964, Brown was classified 1-A. He was notified of this by the board on February 24, 1964, and he took no appeal from this classification. On October 29, 1964, and on June 4, 1965, the board mailed Brown current information questionnaires which he filled out and returned to the board without objection or even a suggestion that he was a conscientious objector. He was ordered to appear for a physical examination on June 21, 1965, was found fit for military service, and he was so informed by the board on July 2, 1965. At no time did he claim that he was entitled to a conscientious objector classification or object to his 1-A classification.

Brown was inducted into the army on September 23, 1965. Claiming that he was a conscientious objector, he thereafter submitted three requests for discharge to different superiors, each of which was denied. He was required to participate in combat training. He refused to train with a weapon and was eventually convicted by general court martial for willful disobedience.

Gilliam also claims to be a conscientious objector. At the time he registered with his local board he did not seek this classification, and in the section of his

---

3. Brown v. Resor, 393 U.S. 10, 89 S.Ct. 51, 21 L.Ed.2d 23 (U.S. Oct. 15, 1968).

4. § 2241 provides in pertinent part:
   (c) The writ of habeas corpus shall not extend to a prisoner unless—
   (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
   (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
   (3) He is in custody in violation of the Constitution or laws or treaties of the United States, or * * *.

5. No penalties were assessed against Brown for his tardiness in registering after having attained his eighteenth birthday.

questionnaire pertaining to claims for exemption as a conscientious objector Gilliam stated "does not apply." In due course Gilliam was classified 1–A and reported for induction on October 12, 1965. He acknowledged his obligation for two years' active duty and four years' reserve duty ("Acknowledgment of Service Obligation"). He made no objection to his induction.

When Gilliam arrived at Fort Polk, Louisiana, on October 19, 1965, where he was assigned for basic training, he submitted a request for discharge as a conscientious objector which was disapproved through the chain of command and Gilliam was so notified on January 24, 1966. On September 6, 1966, Gilliam filed his petition for a writ of habeas corpus, having been placed in the military stockade for his refusal to train with a weapon.

With this background we turn to the assignment of errors urged by the appellants. First, Brown asserts a violation of Fifth Amendment due process because the board failed to follow Selective Service Regulations which resulted in his unlawful induction into the Army. To support this he attacks the finding of fact by the District Court that he never claimed to be a conscientious objector until after his induction. Gilliam argues that the District Court was in error in finding that he was ever actually inducted into the Army.

### Brown's Due Process Claim

Brown claims that he was unlawfully inducted into the Army because of the failure of the board to follow Selective Service Regulations, thus violating Due Process of Law guaranteed by the Fifth Amendment to the Constitution.

Brown's complaint that the board violated Section 1621.11 [6] of the Regulations in not furnishing him a Form No. 150 so that he could record his conscientious objector status and in not informing him that his Classification Questionnaire was deficient under Section 1621.13 [7] because Series VIII of the Classification Questionnaire should have been completed so that he could obtain Form No. 150, necessarily rests upon Brown's assertion that he notified the Clerk of the board at the time of his registration that he was a conscientious objector.

The District Court found "that petitioner never claimed to be a conscientious objector until after his induction and after he became stationed at Ft. Polk, Louisiana. We find this as a fact." Brown v. Reaves, *supra*, 294 F.Supp. at 858. A careful review of the record convinces us that the Trial Court's finding is not clearly erroneous—it is clearly correct. Smith v. Beto, 5 Cir. 1968, 395 F.2d 747.[8]

### Gilliam's Contention that He Was Never Actually Inducted Into the Army

Notwithstanding that Gilliam did not seek classification as a conscientious objector and served nearly eleven months in the military service, he then for the first time claimed that he was never given an opportunity to take, or to decline to take, the traditional "step forward" into the Army, nor the oath of induction, both of which, he argues, are

---

6. Section 1621.11, in force at the time Brown registered provided in pertinent part that: " * * * the local board, upon request, shall furnish any person claiming to be a conscientious objector a copy of such Special Form for Conscientious Objector (SSS Form No. 150)."

7. Section 1621.13 provides: "When a registrant's Classification Questionnaire (SSS Form 100) omits needed information, contains material errors, or shows that the registrant failed to understand questions, the local board may return

the Classification Questionnaire (SSS Form 100) to the registrant for correction and completion and direct him to return the same so completed and corrected on or before a specified date."

8. See also Webb v. Beto, 5 Cir. 1966, 362 F.2d 105, cert. denied 385 U.S. 940, 87 S.Ct. 307, 17 L.Ed.2d 219, cert. denied 386 U.S. 930, 87 S.Ct. 876, 17 L.Ed.2d 804; Fortner v. Balkcom, 5 Cir. 1967, 380 F.2d 816; Waters v. Beto, 5 Cir. 1968, 392 F.2d 74; Doughty v. Beto, 5 Cir. 1968, 396 F.2d 128.

prerequisite to military jurisdiction.[9] Gilliam asserts that although he reported for induction as ordered he was in an adjoining room at the time of the induction ceremonies and that he did not step forward like the others.

■ Gilliam's argument that he did not take the oath gives us little pause. Failure to take the oath has no legal significance.[10]

■ We are equally unimpressed with Gilliam's claim that, having failed to step forward, he was never inducted into the Army, and, therefore, was not subject to military jurisdiction. We need not iterate the chronology of Gilliam's various contacts with his draft board which we have previously chronicled. Suffice it to repeat here only that he failed to offer any objection to his induction, signed an acknowledgment of his service obligation, complied with his order to report to Fort Polk, and for almost eleven months thereafter conducted himself as a soldier.

In Mayborn v. Heflebower, 5 Cir. 1944, 145 F.2d 864, the selectee consistently represented himself to be an ordained minister and exempt from military service. At the induction station he refused to take the oath and when he told the officer of this he was informed that he was nevertheless in the army. Thereafter he performed the duties of a soldier from January 5, 1944, to March 27, 1944. When he refused to obey an order, he was court martialed. We held that the taking of the oath was not a prerequisite to induction and further said:

> We are of the further opinion that whether or not all formalities prerequisite to induction were observed,

the subsequent conduct of the parties was such that the irregularities were cured or the right to invoke them was waived. It is manifest that the induction officers regarded appellant as a soldier at all times after the induction ceremony was completed, and appellant voluntarily accepted the benefits and assumed the obligations incident to membership in the armed forces. The idea that a soldier's tenure in the service may be terminated by him at will, or that a selectee may enter the army on a trial basis and stay if he likes it or leave if he does not, is wholly foreign to the military concept in time of war, and diametrically opposed to the necessary policy of any sovereign. *Id.* at 866.

See also Stevenson v. McDonald, 5 Cir. 1952, 199 F.2d 939; Sanford v. Callan, 5 Cir. 1945, 148 F.2d 376; Hibbs v. Catovolo, 5 Cir. 1944, 145 F.2d 866.

Gilliam's reliance on Billings v. Truesdale, 1944, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917, and Corrigan v. Secretary of Army, 9 Cir. 1954, 211 F.2d 293 is misplaced. In *Billings* it was "conceded that petitioner was not 'actually inducted' in the Army." *Id.* at 545, 64 S.Ct. at 740. In *Corrigan,* while the court held that the petitioner was not inducted into the armed forces because he had refused to take the oath and step forward and had told the officer in charge that he refused to do so and would not serve— a factual situation wholly different than that *sub judice*—the court further observed that by conduct consistent with soldier status "one may emerge from a selectee to a soldier without taking the step forward." *Id,* at 295.[11]

9. 50 U.S.C.A.App. § 462 provides in part: No person shall be tried by court martial in any case arising under this title unless such person has been actually inducted for the training and service prescribed under this title or unless he is subject to trial by court martial under laws in force prior to the enactment of this title.

10. Para. 37(b) of Army Regulations 601–270. Furthermore, the Induction Ceremony in effect at the time (and attached as an appendix) reflects this.

11. Chernekoff v. United States, 9 Cir. 1955, 219 F.2d 721, and Cox v. Wedemeyer, 9 Cir. 1951, 192 F.2d 920, relied upon by Gilliam are inapposite. *Chernekoff* was a criminal prosecution of an alleged conscientious objector in which it was found that he never refused to be inducted. In *Cox* the defendant at the time of his induction and continually thereafter asserted his refusal to serve as a soldier. The Court found that "There is no evidence of such express or

We are fully convinced that the District Court correctly found that Gilliam was inducted into the Army and was subject to military jurisdiction.

### Brown and Gilliam's Claims of Denial of Basic Constitutional Rights

Both Brown and Gilliam requested a discharge at Fort Polk on the ground that they were conscientious objectors. The form used by the military for this purpose contains a section for the names and addresses of persons who may substantiate the sincerity of the applicant's beliefs. Although Brown was required to contact these references, he failed to do so. Thereafter his military superiors wrote to three references and received responses from two of them in which they stated that Brown's conscientious objections were unknown to them and that he was not a member of Jehovah's Witnesses.

In Gilliam's request for discharge he offered no supporting data other than that contained in the form. Gilliam's military superiors sought to obtain further information covering the sincerity of Gilliam's belief through interviews with his immediate Commanding Officer, his Battalion Commander, the Chaplain, and by having Gilliam examined by a psychiatrist. All of them concluded without equivocation that Gilliam was not sincere in his stated belief.

Both Brown and Gilliam's requests for discharge were processed in accordance with the Department of Defense Directive then in effect,[12] and each request was denied through the various levels of the chain of command. Ultimately, at the request of the Adjutant General of the Army, the National Director of Selective Service submitted an advisory opinion that neither Brown nor Gilliam would be classified as conscientious objectors if they were being considered for induction at that time. The Adjutant General thereupon denied both requests. His directive concerning Gilliam stated:

1. The application for release as a conscientious objector submitted by Private Warren E. Gilliam, Jr., is not favorably considered.

2. Private Gilliam is not a member of a religious organization or Sect and

---

voluntary waiver as appeared in Mayborn v. Heflebower, 5 Cir. 1944, 145 F.2d 864, or Sanford v. Callan, 5 Cir. 1945, 148 F.2d 376." Cox, *supra* at 923, 924 (footnote omitted).

12. The standards used by the Selective Service System in determining 1–0 or 1–A–0 classification of draft registrants prior to induction are considered appropriate for application to cases of servicemen who claim conscientious objection after entering military service. 1–A–0 classification permits induction into the military service and the inductee is required to perform duties as outlined in Section V.A. of this Directive. 1–0 classification does not permit induction into military service but does permit induction into the Alternate Service Plan (Conscientious Objectors' Work Program). In either of the classifications the registrant is required to fulfill his obligations under the UMT&S Act.

\* \* \* \* \*

The criteria for determining conscientious objection (other than the statutory requirement that the objection be religious, as opposed to personal or philosophical) are not absolute objective measurements which can be applied across the board, but are the result of extensive experience and practices which have been upheld in the Court in connection with legal obligations for service. Among the factors considered are such items as membership in a peace church, training in home and church, the general demeanor and pattern of conduct of the individual, his employment in defense-connected activities, his participation in religious activities, and his credibility and the credibility of persons supporting his claim \* \* \*."

\* \* \* \* \*

While church membership and church tenets are relevant in determining conscientious objection, they are not compelling. The courts have held that mere membership in a religious group teaching conscientious objection is not an automatic basis for classification as a conscientious objector nor does membership in a group which does not require conscientious objection constitute an automatic basis for denying such classification. The law does not require affiliation with any particular group in order that an individual may be classified as a conscientious objector.

the evidence as presented does not warrant separation. In reaching this decision consideration was given to the opinion of the Director of the Selective Service System.

By order of the Secretary of the Army:

/s/ H. F. Wise[13]

Adjutant General

It is manifest that both Gilliam and Brown were given every opportunity to substantiate their claims that they were conscientious objectors, and that they were given help and assistance all along the way by military personnel. As the District Court succinctly put it, "There is nothing that even remotely suggests that Gilliam [Brown] received anything other than courteous and proper treatment." Gilliam v. Reaves, *supra*, 263 F. Supp. at 384; Brown v. Reaves, *supra*, at 861.

Finally, Gilliam and Brown, seizing upon part of the Adjutant General's directive (Private Brown or Gilliam "is not a member of a religious organization or sect"), urge that membership in a church was made a determinative factor in denying their claims of conscientious objectors in violation of the due process clause of the Fifth Amendment and the free exercise and establishment clause of the First Amendment.

Congress has exempted conscientious objectors from combatant training and service.[14] Gilliam and Brown argue that because of their religious training and beliefs they were entitled to the exemption, and the denial of it by the Army, because they did not belong to a church or sect, was contrary to the holding of the Supreme Court in United States v.

Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733. There the Court said,

\* \* \* the test of belief "in relation to a Supreme Being" is whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God of one who clearly qualified for the exemption. Where such beliefs have parallel positions in the lives of their respective holders we cannot say that one is "in relation to a Supreme Being" and the other is not. \* \* \*

*Id.* at 165, 166, 85 S.Ct. at 854.

█ It cannot be gainsaid that if the denial of conscientious objector status by the Army was predicated upon the fact that Gilliam and Brown were not church-goers such action would have been contrary to the principle stated in *Seeger* and would also have been a violation of both the First and Fifth Amendments. But we simply cannot omit or ignore that part of the Adjutant General's directive which said "and the evidence as presented does not warrant separation," and that "In reaching this decision consideration was given to the opinion of the Director of the Selective Service System." It is worth iterating that the Director wrote that Gilliam and Brown would not be classified as conscientious objectors if they were being considered by the draft board at that time and to add that this advisory opinion made no reference to religion or religious sect. Moreover, we fully agree with the District Court that "The totality of the evidence convinces us that the Army rejected the request for discharge because it concluded that Gilliam's [and Brown's] professed 'religious belief' was [were] not truly held."

13. The Adjutant General's directive concerning Private Londell Brown was the same.

14. Section 6(j) of the Universal Military Training and Service Act, 50 U.S.C.A. App. 456(j) provides in part:

Nothing contained in this title \* \* \* shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. \* \* \* the term "religious training and belief" does not include essentially political, sociological, or philosophical views, or a merely personal moral code.

Gilliam v. Reaves, *supra* 263 F.Supp. at 385; Brown v. Reaves, *supra* at 862.

██ As the Court said in *Seeger*, *supra:*

\* \* \* while the "truth" of a belief is not open to question, there remains the significant question whether it is "truly held." This is the threshold question of sincerity which must be resolved in every case. It is, of course, a question of fact—a prime consideration to the validity of every claim for exemption as a conscientious objector.

380 U.S. at 185, 85 S.Ct. at 863.

We have no doubt that the District Court correctly resolved the factual issue of sincerity in this case and properly denied the petitions for habeas corpus.[15]

Affirmed.

## APPENDIX
### INDUCTION CEREMONY

1. Registrants will be assembled in Oath Room on the basis of SN roster. First man on the roster is the first man of the first row. Registrant Control NCO will call roll to insure all persons are present.

2. Registrant Control NCO will brief and orient registrants concerning transportation, meals, military discipline, etc.

3. Inducting Officer will inform them of the imminence of induction quoting the following: "You are about to be inducted into the Armed Forces of the United States, in the Army, the Navy, the Air Force, or the Marine Corps, as indicated by the service announced following your name when called. You will take one step forward as your name and service are called and such step will constitute your induction into the Armed Forces indicated. I am required to ask if there is anyone in this room who is contemplating refusing induction." (If a registrant so indicates, he will be removed from the room following the in-

duction ceremony and prior to the Oath of Allegiance.)

4. As the Inducting Officer calls the names of the registrants, the registrant control NCO will watch each man to insure that he takes the required step. Following the ceremony, the inducting Officer will ask: "Is there anyone whose name was not called? Is there anyone who intentionally failed to take a step forward because he intended to refuse induction?" In the event that any registrant fails or refuses to step forward when his name is called he will be removed quietly and courteously from the presence of the group and be processed as prescribed in paragraph 40c AR 601–270.

[15] In his brief on appeal Brown attempted to raise for the first time the issue of systematic exclusion of negroes from his local board and the Selective Service System of Louisiana. During oral argument of the case counsel for Brown withdrew this point.