Reversed and remanded for further proceedings consistent herewith.

IN THE MATTER OF THE DENIAL OF PRIVATE DETECTIVE
LICENSE OF MIMS HACKETT, JR.,
PETITIONER-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 16, 1983—Decided June 27, 1983.

Before Judges ARD, KING and McELROY.

*Laura Bertollo* argued the cause for appellant (*Craig & Edelstein*, attorneys).

*Gregory C. Schultz*, Deputy Attorney General, argued the cause for respondent, Division of State Police (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

KING, J.A.D.

This case concerns the collateral civil consequences of a criminal conviction where a federal court has granted *habeas corpus* and the State has declined to retry defendant or to appeal the grant of the writ.

This is the background. On November 10, 1976 appellant Hackett was found guilty, after jury trial, of kidnapping, *N.J.S.A.* 2A:118–1, then a high misdemeanor, and simple assault and battery, *N.J.S.A.* 2A:170–26, a disorderly persons offense. Hackett was sentenced to the then-mandatory term of 30 to 31 years for kidnapping, *N.J.S.A.* 2A:118–1, and a concurrent six-month term for the simple assault.

Hackett appealed to this court which remanded to the trial division in June 1977 so that he could move for a new trial on the grounds of newly discovered evidence. He contended that two of the three identification witnesses for the State had recanted. The new trial motion failed; the judge found that the recantations lacked "the ring of truth." Thereafter, in June 1978 this court affirmed the convictions in an unpublished opinion and in September of that year our Supreme Court denied certification. 78 *N.J.* 332 (1978).

Hackett began serving his sentence and on October 19, 1978, while in custody, he filed a petition for a writ of *habeas corpus* in the United States District Court pursuant to 28 *U.S.C.A.* § 2254. On February 22, 1979 Governor Byrne signed an order for commutation of Hackett's sentence, reducing it from 30 to 31 years to two to three years. He was released on parole on July 17, 1979.

On July 31, 1980 the District Court ordered that a writ of *habeas corpus* issue unless the State began retrial within 90 days. *Hackett v. Mulcahy,* 493 *F.Supp.* 1329, 1340 (D.N.J.1980). The District Court judge found that Hackett had been deprived of his fundamental rights and due process of law because the trial judge had refused to allow him to call alibi witnesses. The trial judge had precluded the alibi witnesses because of noncom-

pliance with the State's notice requirement, *R.* 3:11–1. The District Court judge stated that he "must address an issue which the Supreme Court has twice declined to decide—whether a notice of alibi statute may be enforced by the exclusion of potentially exculpatory evidence." *Id.* at 1330–1331 (footnote omitted). The District Court judge considered the defect in the notice of alibi witnesses furnished to the State before Hackett's trial as highly technical in nature, saying

> The trial court's refusal to permit the introduction of evidence crucial to petitioner's case visited a terrible punishment on a party innocent of even the minor transgression of the rules revealed by this record. He was deprived of the right to defend himself. The prosecutor's conduct in using the defense which the jury was not permitted to hear to undermine the credibility of the defense which they did hear was grossly unfair. In view of the highly technical nature of his counsel's error, the absence of any evidence of complicity by petitioner in that error, the lack of any prejudice to the State caused by the error, the severe prejudice to petitioner caused by the preclusion sanction, and the use of that sanction by the prosecution before the jury, we find that this defendant was deprived of fundamental rights and of due process of law. [*Id.* at 1340.]

The State filed a notice of appeal to the Third Circuit Court of Appeals from the grant of *habeas corpus.* The notice of appeal was later withdrawn and the appeal was dismissed on September 22, 1980. The Essex County prosecutor's office then informed Hackett that they did not intend to retry him.

In late 1981 Hackett applied for a private detective's license, a profession regulated by the Private Detective Act of 1939. *N.J.S.A.* 45:19–8 *et seq.* The license application was denied by the Division of State Police because his conviction for kidnapping created a regulatory disqualification for licensure, *N.J.S.A.* 45:19–12 (good character, competency and integrity required for license); *N.J.A.C.* 13:55–1.11(a)(1) (conviction of a high misdemeanor automatic regulatory ban). The regulation compels mandatory disqualification for high misdemeanants if they have "not subsequent to such conviction received executive pardon therefor removing any civil disabilities incurred thereby." *N.J. A.C.* 13:55–1.11(a)(1). The Private Detective Act itself contains no specific mandatory disqualification for high misdemeanants.

Hackett then requested an administrative hearing which was held by the Office of Administrative Law. The administrative law judge concluded that Hackett's license denial, solely on the ground that his disqualifying conviction for a high misdemeanor was still of record, was appropriate. He gave five reasons for agreeing with the Division of State Police: (1) Hackett's conviction had been affirmed by this court and certification had been denied, (2) the constitutional deprivation was based on an issue never squarely decided by the United States Supreme Court, (3) the refusal of the prosecutor to appeal the grant of the writ or retry the petitioner was not a "concession that the writ was properly issued," (4) no pardon had been granted, and (5) the public interest in strict regulation of private detectives. The Superintendent of State Police adopted the decision of the administrative law judge as his final decision and denied the license. *N.J.S.A.* 52:14B–10(d).

The traditional power of the federal courts in issuing a writ of *habeas corpus* has been limited to release of the prisoner. For an interesting recent analysis of the operation of the Federal habeas system see Allen, Schachtman and Wilson, *Federal Habeas Corpus and its Reform: An Empirical Analysis*, 13 *Rutgers L.J.* 675 (1982). In *Fay v. Noia*, 372 *U.S.* 391, 430–431, 83 *S.Ct.* 822, 844–845, 9 *L.Ed.*2d 837 (1963), the Supreme Court said that "[h]abeas lies to enforce the right of personal liberty; when that right is denied and a person is confined, the federal court has the power to release him. Indeed, it has no other power; it cannot revise the state court judgment; it can act only on the body of the petitioner."

However, in *Carafas v. LaVallee*, 391 *U.S.* 234, 88 *S.Ct.* 1556, 20 *L.Ed.*2d 554 (1968), the Supreme Court ruled that a person bringing a *habeas corpus* petition under 28 *U.S.C.A.* §§ 2241–2254 did not have to be in actual custody at the time the writ was decided. Prior to *Carafas* if a petitioner was released from custody before the decision on the merits, his petition was mooted. *Parker v. Ellis*, 362 *U.S.* 574, 80 *S.Ct.* 909, 4 *L.Ed.*2d 963 (1960). In overruling *Parker*, the *Carafas* Court explained why the petition was not moot.

It is clear that petitioner's cause is not moot. In consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror. Because of these "disabilities or burdens [which] may flow from" petitioner's conviction, he has "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him." *Fiswick v. United States,* 329 *U.S.* 211, 222, 67 *S.Ct.* 224 [230], 91 *L.Ed.* 196, 203 (1946). On account of these "collateral consequences," the case is not moot. *Ginsberg v. New York,* 390 *U.S.* 629, 633–634, n. 2, 88 *S.Ct.* 1274 [1276–1277 n. 2], 20 *L.Ed.2d* 195, 200 (1968); *Fiswick v. United States, supra,* at 222, n. 10 [, 67 *S.Ct.* at 230 n. 10], 91 *L.Ed.* at 203; *United States v. Morgan,* 346 *U.S.* 502, 512–513, 74 *S.Ct.* 247 [253–254], 98 *L.Ed.* 248, 257–258 (1954).

＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

In the present case, petitioner filed his application shortly after June 20, 1963, while he was in custody. He was not released from custody until March 6, 1967, two weeks before he filed his petition for certiorari here. During the intervening period his application was under consideration in various courts. Petitioner is entitled to consideration of his application for relief on its merits. He is suffering, and will continue to suffer, serious disabilities because of the law's complexities and not because of his fault, if his claim that he has been illegally convicted is meritorious. There is no need in the statute, the Constitution, or sound jurisprudence for denying to petitioner his ultimate day in court. [391 *U.S.* at 237–239, 88 *S.Ct.* at 1559–1560.]

Thus, at least for mootness purposes *Carafas* recognized that the impact of collateral consequences of state court convictions was a sufficiently compelling reason for exercising federal *habeas* jurisdiction even after discharge from physical custody.

Indeed, our research discloses that the discussion of collateral consequences of state court convictions almost invariably arises within the mootness context. *See, e.g., Matthews v. Florida,* 463 *F.2d* 679, 681 (5 Cir.1972); *Brown v. Resor,* 407 *F.2d* 281 (5 Cir.1969), *cert.* den. 399 *U.S.* 933, 90 *S.Ct.* 2249, 26 *L.Ed.2d* 806 (1970); *Nix v. State,* 233 *Ga.* 73, 209 *S.E.2d* 597, 598 (Sup.Ct. 1974), aff'd 236 *Ga.* 110, 223 *S.E.2d* 81 (Sup.Ct.1976); *Duran v. Morris,* 635 *P.2d* 43, 45–46 (Utah Sup.Ct.1981). We have found no case quite like the instant one, where a successful *habeas* petitioner, not subjected to retrial, has challenged an attempt by a state to use an unconstitutionally obtained conviction as a bar to a privilege of citizenship like licensing, voting, or for disqualification from office or employment.

The Supreme Court of Georgia is the one authority that has spoken, at least theoretically, on the precise issue. In *Cooper v. State*, 245 *Ga.* 60, 262 *S.E.*2d 816 (1980), petitioner appealed from a partially favorable judgment in a state *habeas* proceeding. Petitioner had been convicted of a series of burglary charges upon uncounselled pleas of guilty. Though he had served his sentence he alleged "that he continue[d] to sustain adverse collateral consequences as a result of said convictions and that said adverse collateral consequences will continue to handicap and plague him in the future if they are not removed . . . ." 262 *S.E.*2d at 817. His constitutional claims were based on both denial of counsel and the systematic exclusion of blacks from the grand jury in the county where the indictments were returned. The trial judge granted *habeas* relief declaring the convictions "constitutionally invalid." *Ibid.* The judge entered an order which "declared [the convictions] null and void *as to any present day collateral consequences and only to that extent.*" *Ibid.* Petitioner objected to this language in the order and appealed, contending that the order was too limited in effect. The Supreme Court of Georgia agreed and reversed, saying

> We agree with the contentions of the appellant. It is hornbook law that a void judgment is a nullity, void ab initio. The trial court, after a hearing, agreed with petitioner's contentions that he failed to have the benefit and assistance of counsel to which he was entitled and that there was a systematic exclusion of black persons from the grand jury which indicted him.
>
> The trial court then concluded that the convictions were "null and void." The trial court could not thereafter breathe life into that order by limiting its collateral consequences to the present and future and not to the past.
>
> *Judgment reversed with direction that the limiting language be stricken from the judgment.* [*Id.* at 817.]

The relief which Hackett seeks on this appeal seems to be precisely the relief the petitioner sought and obtained from the Georgia Supreme Court in *Cooper v. State*, namely, an adjudication that a conviction obtained in violation of a federal constitutional right cannot fairly be used by the State to diminish his rights as a citizen. This relief, as noted in *Fay v. Noia, supra*, 372 *U.S.* at 431, 83 *S.Ct.* at 844, is unavailable in a federal court on *habeas* which "cannot revise the state court judgment; it can

act only on the body of the petitioner." The question before us is whether that relief should be available in this state proceeding.

The Attorney General contends that *Smith v. Spina*, 477 *F*.2d 1140 (3 Cir.1973), is persuasive authority against Hackett's claim on this appeal. In *Spina* the defendant in a federal criminal trial was impeached through the introduction of a prior state conviction. Following this federal criminal trial, a writ of *habeas corpus* was granted by the federal courts on the ground of improper jury selection with respect to the prior state conviction used for impeachment. The *Spina* court ruled that admission of the state criminal conviction to impeach defendant's credibility before the writ had been granted was not reversible error stating: "It does not have the force and effect of voiding a conviction. Moreover, at the time the evidence was introduced at trial, no court had granted the writ of habeas corpus." *Id.* at 1147. The Third Circuit also observed that the federal courts followed the general rule "that it is permissible to attack the credibility of a witness by showing a previous criminal conviction even though an appeal therefrom or a motion for new trial is pending." *Id.* at 1148. *See Fed.R.Evid.* 609(e). We think the *Spina* decision's rationale was based primarily on the use of the impeaching conviction before the writ had issued. Moreover, New Jersey does not permit use of a prior conviction still under attack on appeal to be used for impeachment. This court in *State v. Blue,* 129 *N.J.Super.* 8, 12 (App.Div.), certif. den. 66 *N.J.* 328 (1974), stated "we find it to be fundamentally unfair to permit the use of a prior conviction to impeach credibility while the very credibility of this conviction itself is under attack through the appellate process." We consider it equally likely, if faced with the issue, that this court would hold that use of conviction, which had been successfully attacked on an application for post-conviction relief, to attack credibility would be just as "fundamentally unfair."

Interestingly, other federal authorities have used language which affirms the view that issuance of a writ of *habeas corpus*

has consequences beyond simply releasing the prisoner, notwithstanding the narrow view of the writ expressed in *Foy v. Noia, supra,* and *Smith v. Spina, supra.* In *Rimmer v. Fayetteville Police Dep't.,* 567 F.2d 273, 276–277 (4 Cir.1977), the Court of Appeals said:

> When, after exhaustion of state court remedies, a prisoner succeeds in an action under § 2254, he is the ultimate victor. While the state court judgment is neither reversed nor vacated, the prisoner is released and the state court judgment authoritatively declared void. Thereafter, the state court judgment should have no preclusive effect.

In *United States ex rel. Hickey v. Jeffes,* 571 F.2d 762 (3 Cir.1978), petitioner was serving a general sentence of five-to-ten years for convictions of theft, involuntary deviate sexual intercourse, carrying a firearm without a license, and committing a crime of violence while armed with a firearm. The court held that his due process rights were violated when the State was not required to present affirmative proof of absence of a license in order to convict for carrying a firearm without a license. The court rejected petitioner's attempts to set aside his other convictions. The court could not modify the sentence, but remanded so that the district court could relieve petitioner of any collateral consequences.

> But under Pennsylvania Law a general sentence will be upheld if there is any valid count sustaining it, despite the invalidity of one or more of the other underlying counts, so long as the sentence is, as here, within the prescribed statutory maximum for the valid conviction. Thus it may be that even if the unlicensed possession conviction is invalid, the Pennsylvania courts would not disturb the sentence. But it does not follow that habeas corpus relief is unavailable. Certainly we must presume, as did the Court in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), and *Pollard v. United States,* 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), that there are present and future collateral consequences, in addition to present custody, flowing from the invalid conviction. And while some form of custody may be deemed to be jurisdictional for federal habeas corpus, "the statute does not deny the federal courts power to fashion appropriate relief other than immediate release." *Peyton v. Rowe,* 391 U.S. 54, 66, 88 S.Ct. 1549, 1556, 20 L.Ed.2d 426 (1968). As early as *Ex parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941), the Court held that a conviction could be challenged in a habeas corpus proceeding even though petitioner would not be released if he prevailed. 28 U.S.C. § 2244(b) provides for "release from custody or other remedy." *See Carafas v. LaVallee,* 391 U.S. 234, 239, 88 S.Ct.

1556 [1560], 20 *L.Ed.2d* 554 (1968); *Walker v. Wainwright,* 390 *U.S.* 335, 336, 88 *S.Ct.* 962 [963], 19 *L.Ed.2d* 1215 (1968); *Jones v. Cunningham,* 371 *U.S.* 236, 243, 83 *S.Ct.* 373 [377], 9 *L.Ed.2d* 285 (1963). The district court has the statutory authority to relieve Hickey from the collateral consequences, whatever they may be, of an unconstitutional conviction even though it would not disturb the general sentence which is sustainable on other counts. [*Id.* at 764–765.]

Considering that the other convictions remained, probably the only possible collateral remedy was to have one less conviction on the record.

The specific power of ordering expungement of records was discussed in *Mizell v. Attorney General of N.Y.,* 586 *F.2d* 942 (2 Cir.1978), *cert.* den. 440 *U.S.* 967, 99 *S.Ct.* 1519, 59 *L.Ed.2d* 783 (1979). In *Mizell* the federal district court had issued a writ of *habeas corpus* because double jeopardy attached when the jury was sworn in petitioner's first trial. The circuit court agreed with the decision on these grounds, but vacated and remanded the petition so that the petitioner could apply for appropriate relief.

Mizell may wish to ask for such other relief. The conviction of September 10, 1971, may subject him to "disabilities or burdens" (*Fiswick v. United States,* 329 *U.S.* 211, 222, 67 *S.Ct.* 224 [230], 91 *L.Ed.* 196 (1946)) and to "collateral consequences" (*Ginsberg v. New York,* 390 *U.S.* 629, 633–34 n. 2, 88 *S.Ct.* 1274 [1276–77 n. 2], 20 *L.Ed.2d* 195 (1968)). The judgment below must be vacated so that Mizell may apply for such other relief. We leave it to the district court to determine what relief should be granted. We note the possibility of a declaration that the September 10, 1971 conviction is void and of an order to the respondent Attorney General to apply in the New York courts for a vacatur of the conviction and for an order expunging it and all references to it from the records. There are few precedents. The problem seems to have arisen in the following cases: *North Carolina v. Rice,* 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971), vacating and remanding *Wood v. Ross,* 434 F.2d 297 (4th Cir.1970); *Pinnell v. Cauthron,* 540 F.2d 938 (8th Cir.1976); *Grandison v. Warden,* 423 F.Supp. 112 (D.Md.1976); *Bentley v. Florida,* 285 F.Supp. 494 (S.D.Fla.1968). See also Sokol, [Federal Habeas Corpus] 78–80 [ (2d ed. 1969) ]. [*Id.* at 948.]

The precedents cited in *Mizell* add little explanation. In *North Carolina v. Rice, supra,* 404 *U.S.* at 248, 92 *S.Ct.* at 405, the court explained that use of a *habeas corpus* petition to challenge an invalid sentence (instead of an invalid conviction) would generally be mooted if the petitioner had served the sentence because collateral consequences flow from the conviction and not the sentence. The court remanded for a determina-

tion if there were collateral consequences that follow specifically from an invalid sentence when the conviction is valid under North Carolina law. The language of the case. does indicate that if the conviction is nullified, petitioner should be freed from the collateral consequences of the conviction. *Id.* at 247–248, 92 *S.Ct.* at 404–405.

In *Grandison v. Warden, Maryland House of Correction,* 423 *F.Supp.* 112 (D.Md.1976), the district court had pursuant to granting a *habeas corpus* petition entered an order which vacated petitioner's convictions, declared them null and void, and ordered the convictions expunged from the record. Petitioner subsequently returned to district court to enforce that order. The court held "that it has the authority to order the expungement of petitioner's records against all persons who maintain custody of such records." *Id.* at 116.

In *Bentley v. Florida,* 285 *F.Supp.* 494 (S.D.Fla.1968), the court granted the writ when petitioner had entered a guilty plea after a brief interview with his attorney. The court granted the following relief:

> It is the conclusion of the Court that petitioner was denied the effective assistance of counsel prior to his plea and sentencing in this case. Upon such finding it is the duty of this Court to dispose of the case as law and justice require. 28 *U.S.C.* § 2243. Because petitioner has completed his sentence and been released from custody, it would be manifestly unjust to order a new trial. But it would be equally inequitable to require him to remain branded as a fellon for a crime of which he was not lawfully convicted. Thereupon it is
>
> Ordered and adjudged that the Order of this Court dated April 26, 1968 be and the same is hereby vacated, and it is further
>
> Ordered and adjudged that the conviction of petitioner be and the same is hereby vacated and set at naught. [*Id.* at 498].

*Pinnell v. Cauthron,* 540 *F.2d* 938, 939 (8 Cir.1976), simply applied the rule in *Carafas* without discussing the power to relieve petitioner from collateral consequences.

Only one New Jersey precedent is significant. In *State v. Perwin,* 67 *N.J.* 594 (1975), defendant had been convicted of defrauding an insurance company by faking automobile accidents. His sentence included $4,000 in fines on a four-count indictment. After unsuccessful State and federal appeals he

prevailed in a federal *habeas* proceeding on double jeopardy grounds as to one of the four counts, the conspiracy count, of the indictment. Since retrial on the remaining three counts— false pretenses—was permissible and not barred by double jeopardy, "[t]he District Court directed that execution of the writ be stayed for 45 days to enable the County Prosecutor to appeal the order, retry the defendant on the three counts of false pretenses, or do both. The Prosecutor chose to drop the matter." *Id.* at 597.

Perwin then sought to force the return of the $4,000 fine under *N.J.S.A.* 2A:166–13, which reads in pertinent part to the effect that when a defendant has paid a fine and "has taken an appeal and obtained a decision in his favor terminating the case of the state against him," the board of freeholders shall return the fine to him. Our Supreme Court agreed with Perwin and ordered the $4,000 fine returned to him. Our court noted the high court's reasoning in *Carafas v. LaVallee, supra,* that "the case was not rendered moot when the defendant was released since the consequences of the conviction resulted in many disabilities, such as inability to vote or serve as a juror." 67 *N.J.* at 599. Our court equated Perwin's successful *habeas* petition as the equivalent of a "decision in his favor terminating the case of the state against him" within the meaning of *N.J.S.A.* 2A:166– 13, where the prosecutor refused to appeal or retry the case. To this extent, at least, our Supreme Court has articulated a collateral impact to the issuance of federal *habeas* beyond simply releasing the prisoner and has analogized it to a successful appeal.

While the regulation confronting us controlling the right to a private detective's license does not specifically speak to reversal of convictions on appeal, but only to executive pardon, as an exception, *N.J.A.C.* 13:55–1.11, our Supreme Court's approach to *Perwin* convinces us that the only fair path here is to treat appellant Hackett's kidnapping conviction as if it had been overturned on appeal and is therefore void as to all collateral

civil disabilities.[1]  We are convinced that under *State v. Blue,*
*supra,* as discussed above, Hackett's conviction could not be used
for impeachment purposes under *N.J.S.A.* 2A:81–12.  Our deci-
sion here is also motivated in part by the realization that the
reason for the grant of the writ by the District Court was the
fundamental deficiency in the reliability of the fact-finding
process at Hackett's kidnapping trial.  He was precluded, in
effect, from presenting his side of the story, his defense.  There-
fore, the reliability of the facts supporting the conviction is
inherently suspect in contrast to an illegal search and seizure
situation where the tainted evidence is itself inherently reliable
and in another context may well be admissible, *e.g.,* a civil
proceeding.  *See United States v. Janis,* 428 *U.S.* 433, 96 *S.Ct.*
3021, 49 *L.Ed.*2d 1046 (1976).  Moreover, the record before us
also discloses that appellant Hackett has been restored, with
retroactive reinstatement of all tenure and pension rights, to his
position as a school teacher employed by the Union City Board
of Education.  He had held that position from 1963 until his
conviction in 1976.  In an order signed on October 2, 1981 the
Commissioner of Education announced his concurrence with the
settlement agreement between Hackett and the Board, thus
permitting Hackett's return to teaching with all retroactive
benefits.  We would create an insensitive irony if we held that
Hackett, deemed fit to teach children in the public schools, could
not even receive the consideration of a fair investigation and
evaluation in his quest for a private detective's license.

We fully realize that the strict regulation of the private
detective profession is an important and sensitive task imposed
on the State Police.  *See Schulman v. Kelly,* 54 *N.J.* 364, 371
(1969); *In re Berardi,* 23 *N.J.* 485, 494–495 (1957).  But we do
not conceive our holding here as inimical to the public interest in
any sense.  The Superintendent of State Police is only precluded
from exercising a *per se* license disqualification where an un-

---

[1]The kidnapping conviction could not be expunged.  *N.J.S.A.* 2C:52–2(b);
*State v. T.P.M.,* 189 *N.J.Super.* 360 (App.Div.1983).

challenged grant of *habeas corpus* has effectively nullified a State criminal conviction. On remand and reconsideration of Hackett's application the Superintendent is free to fully examine Hackett's background in determining if he meets the statutory and regulatory criteria for licensing. *N.J.S.A.* 45:19–12 (good character, competency and integrity); *N.J.A.C.* 13:55–1.-11 [2] (regulatory grounds for denial of a license).

The matter is reversed and remanded to the Division of State Police for reconsideration of appellant's application for a private detective's license as if the record of the kidnapping conviction did not exist.

---

[2]*N.J.A.C.* 13:55–1.11 ("Ground for denial, revocation, suspension or refusal to renew a license") reads as follows:

(a) The Superintendent may deny, revoke, suspend or refuse to renew a license upon determining that the applicant or licensee has:

1. Been convicted of a high misdemeanor or any of the misdemeanors or offenses prescribed by *N.J.S.A.* 45:19–16 and who has not subsequent to such conviction received executive pardon therefor removing any civil disabilities incurred thereby;

2. A bad moral character, intemperate habits or a bad reputation for truth, honesty and integrity;

3. Knowingly made a false material statement in his application;

4. Been convicted of a violation of the New Jersey Wiretapping and Electronic Surveillance Control Act (*N.J.S.A.* 2A:156A–1 *et seq.*);

5. Practiced fraud, deceit or misrepresentation, including but not limited to:

i. Knowingly making a false statement or written report relating to evidence or information obtained in the course of employment;

ii. Manufacturing evidence;

iii. Accepting employment adverse to a client or former client relating to a matter with respect to which the licensee has obtained confidential information by reason of or in the course of his employment by such client or former client;

6. Demonstrated incompetence or untrustworthiness in his actions;

7. Failed to maintain a proper surety bond as required by *N.J.S.A.* 45:19–12; or

8. Failed to meet or continue to meet the requirements for licensure provided by the Act and these rules.

(b) The Superintendent may, upon written notice, suspend or revoke any license pursuant to *N.J.S.A.* 45:19–13, pending any hearing provided for by law or these rules.